WILLIAM P. ABENDROTH *vs.* THE TOWN OF GREENWICH.

The duty to make necessary bridges over streams which are the dividing line between this state and adjoining states, rests with the state alone, and the towns have no duty or power in the matter.

Where such a bridge had been built by private subscription and the town within which a part of it lay afterwards voted to accept the part lying within this state as a public bridge and to pay a certain amount towards the expense incurred in building it, it was held that the undertaking of the town was both without consideration and beyond its power.

Where a party has agreed to "convey" certain real estate, it is not enough for him to show that he has tendered a deed of it, but he must show that he had a title to it at the time, so that his deed would have conveyed the property.

ASSUMPSIT, brought to recover from the town of Greenwich the sum of six hundred dollars which the town had voted to pay to the plaintiff, in consideration of a bridge previously erected, which he agreed to convey to the town.

The bridge had been built by the voluntary subscriptions of the plaintiff and others, inhabitants of the villages of Portchester in the state of New York, and of East Portchester, in the town of Greenwich in this state, across Byram river, which at this place is the dividing line between the states of New York and Connecticut. The bridge was situated partly in each state, connected the two villages, and was necessary to their business intercourse and of great convenience to the public, and since its erection had been used as a free bridge by the public. It was built without any authority or request

Abendroth v. Town of Greenwich.

from the town of Greenwich. At the session of the General Assembly of this state, in May, 1857, (some time previous to which the bridge was built,) upon the application of the citizens who had contributed to the expense of the bridge, the following resolution was passed by the legislature:—

" Whereas a bridge connecting the village of Portchester, in the state of New York, with the village of East Portchester, in the town of Greenwich, in the state of Connecticut, has recently been built by the voluntary contributions of the good people of those places, across the Byram river, where it divides said two states, in a place that will not, and can not impede and obstruct the public navigation of the waters of said river, to the prejudice or inconvenience of the public or of any person, being at the head of the navigable waters of said river ; and whereas said bridge is necessary to the intercourse and business transactions of those two places, and will be of great convenience and accommodation to the public :

" Therefore, Resolved by this General Assembly, That the location and establishment of said bridge at said place be and hereby are assented to, sanctioned and confirmed, and that the maintenance of the same in that place hereafter be and hereby is authorized ; provided the town of Greenwich shall not be held liable to maintain said bridge, or any part thereof."

On the 30th of May, 1859, upon the proposal of the plaintiff that the town should accept and maintain that portion of the bridge lying within this state and should pay for the same, and that he should convey the bridge to the town, with certain roads in the town leading to it, the town of Greenwich, at a meeting legally warned and held, passed the following votes :—

" Voted, That the town of Greenwich accept of and agree to maintain that portion of the bridge within the state of Connecticut which leads from East Portchester, in the state of Connecticut, to Portchester in the state of New York.

" Voted, That the street called Mill street, and that part of Water street lying south of Mill street, be accepted by the town as public highway.

" Voted, That the town pay to William P. Abendroth the sum of six hundred dollars towards the expense of building said bridge, and that the selectmen be authorized to draw an order on the treasurer of the town to pay the said sum."

On the 13th day of June, 1859, the town, at a meeting legally warned and holden, passed a vote rescinding these votes. On the 10th day of June the plaintiff tendered to the selectmen of the town a deed purporting to convey that part of the bridge which lay in the state of Connecticut, and made demand upon them for the sum of $600, or for an order on the treasurer of the town for that amount ; but the selectmen refused to accept the deed or to pay the money or draw the order, and the money had never been paid.

On the trial the plaintiff claimed the right to recover the sum of $600 from the defendants, on the ground of an express promise made by them by their vote of May 30th, 1859, with interest from the 10th day of June, 1859, when he tendered the deed. There was no evidence of any title to the bridge in question in the plaintiff, except what may be inferred from the foregoing facts. The defendants insisted that there was no consideration for the promise declared upon; that the vote of May 30th, 1859, was an offer to give the sum of $600 as a mere gratuity to the plaintiff, which the town had no authority to do ; that the plaintiff, on the 10th day of June, 1859, had no interest in the bridge which he could convey to the defendants ; and that the bridge had before that time been dedicated to the public, and therefore all the consideration for the supposed promise was past and executed before the date of the vote. The court sustained the claims of the defendants, and found the issue in their favor. The plaintiff moved for a new trial.

*Dutton* and *Curtis*, in support of the motion.

The town had power to assume the bridge and appropriate its funds to payment for it. The bridge is found to be one required by public convenience and necessity. It is therefore one which it was the duty of the town to make. It does not alter the case that the river was the dividing line between this state and

another.   The jurisdiction of the town extended to the middle of the river.   The bridge was already built entirely across the river.   No question therefore could arise with regard to the means of procuring an extension of the bridge in the state of New York, if the town had built its half in this state.   That extension was already made.   It is as if the part in the state of New York had been first built and the question was whether the town should build the half on this side to meet it. It is thus the same thing as laying out a highway up to a state line to meet a highway in the other state.   The fact that the other state may not make its highway, or may discontinue it, while a consideration with the commissioners in determining whether they shall lay out the highway, is no legal reason against the power of the town in the matter.   The town in making the bridge would act merely within its own territory, and though the action of the people of the adjoining state, with regard to the half of the bridge erected or to be erected within their limits, would enter into the question of the expediency of the action of the town on this side, it would not affect its power.   Even if there were no way of compelling a town to make such a bridge, it would seem to be entirely reasonable that it should be held to have the power to make it where it chooses to do so, and where public convenience and necessity require it.

The vote of the town assuming the bridge and agreeing to pay for it, was binding on the town, and could not be revoked. It is said that the vote, regarded as a contract, was not binding on the town, because the consideration of the vote, the promise of the plaintiff to convey the bridge, was not in writing.   But it is necessary only that the promise sought to be enforced, the promise of the party charged, should be in writing.   2 Parsons on Cont., 290, and note.   1 Swift Dig., 237. It is then said that the contract was without consideration, because the plaintiff had no interest in the bridge which he could convey, as the bridge had already been dedicated to the public and had become public property ; and it was on this ground that the court below decided against the plaintiff. But such a dedication must be accepted by the public.   Ang.

on Highways, § 132. And then the public get only an easement. The rights of the original owner remain the same as before, subject only to this easement. And it requires more evidence to prove an acceptance of a bridge than of a highway. Id., § 164. It is then said that the plaintiff did not prove his title to the bridge, so as to show that he had any right whatever to convey. The bridge however was in fact built upon his land, and this fact was taken as an admitted one throughout the case. It is a point about which no question was made below. It is true that this fact does not appear in express terms in the motion ; but the motion finds that the plaintiff tendered to the town a deed of the bridge, and no objection was made by the selectmen of the town on the ground of the want of title in the plaintiff. The refusal to accept the deed was wholly for other reasons. The plaintiff manifestly had some interest, as he is found to have built the bridge with others. This objection, not having been made in the court below, will not be entertained here. It is further urged that, so far as the building of the bridge was the consideration of the vote, it was a past consideration, and therefore not a valid one, especially as it is found that the bridge was not built at the request of the town. But as the town has taken the benefit of the bridge, by the use of it by its inhabitants, the law will imply a request. Especially will this be so when the town, by its vote, has formally accepted and assumed the bridge. And a past consideration, for which a party has either made request, or of which he has received the benefit, is a good consideration for his promise. 1 Swift Dig., 203.

*Hawley*, contra.

The vote of the town is not to be regarded as a promise. It is a mere declaration of its willingness to pay for the bridge, and independently of its revocation furnished no ground of action. But if it is to be regarded as a promise, it was a promise to pay, not for a part of the bridge to be conveyed to the town, but towards the already incurred and past expense of building it. Such a promise was not obligatory upon the town. The bridge had already been built by individuals for

their own purposes, and not at the request of the town or in any proper sense for the town. The legislature sanctioned its location, but with the express provision that the town should not be liable to maintain it. The town being thus under no obligation to maintain the bridge, its promise to pay for a part of the expense of building it was wholly without consideration. But so far as the incurring the expense by the persons who built it may be regarded as a consideration, it was a past one, and therefore not a good consideration to sustain the promise. *Frear* v. *Hardenberg*, 5 Johns., 272. *Comstock* v. *Smith*, 7 id., 87. *Chaffee* v. *Thomas*, 7 Cowen, 358. *Cook* v. *Bradley*, 7 Conn., 57.

The town not only could not have been compelled to maintain the bridge, but it had not the legal power to build or maintain it. Such a bridge can be built and maintained only by the joint or concurrent action of both states. Our laws imposing duties on towns in relation to bridges, are applicable, and necessarily so, only to such bridges as are entirely within this state, and the towns have no power to appropriate their funds for the maintenance of that which the laws do not require or expressly authorize them to maintain. *New London* v. *Brainard*, 22 Conn., 552. *Hodges* v. *Buffalo*, 2 Denio, 110. *Stetson* v. *Kempton*, 13 Mass., 272. *Parsons* v. *Goshen*, 11 Pick., 396. Here it is plain that the town would not have had the power to build one half the bridge, because it would have no remedy to compel the reparation or continued maintenance of the other part; and if the other part should not be kept up, the part built by the town would become of no value. Where the state assumes the burden, it can procure by negotiation the necessary security from the adjoining state for the continued maintenance of the bridge.

The vote is not obligatory on the town for the further reason that the promise of the plaintiff to convey the bridge was not in writing. The bridge is to be regarded as real estate, and by the statute of frauds the plaintiff's promise was not binding because not in writing. To make a valid consideration for the promise of the town the plaintiff's promise must be an obligatory one.

But even if the vote was obligatory on the town, yet the plaintiff could have no right of action until he had conveyed or offered to convey the bridge to the town. But it is only found that he had tendered a deed. A mere tender of a deed is not enough. He must prove a title, and it is not found that he had any title. Even if it is to be inferred from the fact that the plaintiff was one of the builders of the bridge, that he was one of the owners of it at the time of the vote, yet it can not be inferred that he had a right to convey the bridge. Where a vendor of land sues the vendee for not accepting a deed, he must always prove a title to the land. *Thompson* v. *Miles*, 1 Esp., 185.

SANFORD, J. By statute, title 24, chap. 1, it is provided that the several towns in this state shall make, build, and keep in good and sufficient repair, all the necessary highways and bridges within the limits of such towns, except when it belongs to some particular person or corporation to maintain such highways or bridges ; and that, when it is necessary to build or repair any bridge across any river or stream of water which is the boundary or dividing line between any towns, it shall be the duty of such towns to build and keep in repair every such bridge, and each town shall pay an equal part of the expense of building and repairing the same, unless it shall be otherwise agreed by such towns. And by the same statute provision is made for the enforcement of those duties. But in relation to the construction or maintenance of bridges across streams of water which form the boundaries or dividing lines between this state and the states adjoining, the statute is entirely silent. The powers, duties and liabilities of towns in regard to highways and bridges, originate in, depend upon, and are limited by, the statutes. And as the legislature has delegated to the towns no authority to fix the location, so it has imposed upon them no obligation to provide for the erection or support, of such bridges.

In this action the plaintiff claims compensation for the erection of a bridge across Byram river, which river at that place forms the boundary between this state and the state of

New York. And if it be true, as we have said, that there is no obligation to erect such a bridge imposed upon our towns by law, then it is difficult to discover any ground upon which the plaintiff's suit can be sustained.

Towns, like other corporations, can exercise no powers except such as are expressly granted to them, or such as are necessary to enable them to discharge their duties and to carry into effect the objects and purposes of their creation. Being required by law to erect and maintain all necessary bridges within their limits, " except such as belong to some particular person or corporation to maintain," and empowered, (Rev. Stat., tit. 3, § 31,) to lay and collect taxes sufficient to defray all lawful and necessary expenses by them incurred, they are enabled to perform that important duty. But the expense of building a bridge which the town is under no legal obligation to construct, is not a necessary expense, and no money can be raised or legally appropriated by the town for the payment of such expense.

The town of Greenwich had no power to make the contract upon which the plaintiff relies. Such power is no where expressly given, and its exercise was unnecessary to enable the corporation to discharge any legal duty or obligation, or to carry into effect any of the objects or purposes for which the corporation was created. The subject was one of which the town had no right to take cognizance, and its action in relation to it was of no binding force whatever. In the language of Mr. Justice Wilde, in the case of *Parsons* v. *Goshen*, 11 Pick., 399, " this limitation upon the power and authority of towns to enter into contracts and stipulations, is a wise and salutary provision of law, not only as it protects the rights and interests of the minority of the legal voters, but as it may not unfrequently prove beneficial to the interests of the majority, who may be hurried into rash and unprofitable speculations by some popular or delusive excitement, to the influence of which even wise and considerate men are sometimes liable." The principles upon which we proceed in the determination of this point are fully recognized in that case, and also in those of *Stetson* v. *Kempton et al.*, 13 Mass., 272, *Bangs* v. *Snow*, 1 id., 181,

and *Hodges* v. *Buffalo*, 2 Denio, 110 ; and by our own court in the case of *New London* v. *Brainard*, 22 Conn., 552.

But there are other grounds also upon which the judgment of the superior court must be affirmed.   If the vote of the town was, as the plaintiff claims, an undertaking to pay him the money which he seeks to recover in this suit, there was no consideration for such an undertaking.   The bridge had been built by the voluntary contribution of individuals, without any request from the town.   Its erection conferred no benefit upon the corporation, because it relieved the corporation from no legal duty or obligation.   The bridge might be, and probably was, very convenient and useful to many of the inhabitants of Greenwich, in common with many other citizens.   It may be, indeed, that a bridge at that place was a matter of " common convenience and necessity," so that had it been within the limits of the town, the town could have been compelled to build it, and yet from the building of it the corporation, the defendant in this suit, would derive no legal benefit or advantage, because it was not a bridge which it was the duty of the corporation to provide.   As well might an ecclesiastical society, or a school district, be charged upon their undertaking by a major vote to pay for this bridge, because some of the members of those corporations enjoyed the facilities and conveniencies which such bridge afforded.

If this bridge was needed for the public accommodation it was the business of the state and not the town to provide for its construction.   The state, therefore, if any one, received the benefits arising from the erection of the bridge.

The construction and support of highways and bridges is by law imposed upon the respective towns in which they are situated, not because the towns or the inhabitants thereof derive any special or peculiar benefits therefrom, but because it seems to be the most equitable and convenient mode of parcelling out that portion of the public burdens amongst those who in some way, either mediate or immediate, must bear them.

Again, the vote upon which the plaintiff relies for his recovery, was passed in answer to the plaintiff's proposal to convey the bridge, and certain highways leading to it, to the

town, and that proposal was the consideration for, and inducement to, the passing of the vote. But the plaintiff neither averred in his declaration, nor proved upon the trial, that he ever made or offered, or had the power to make, the proposed conveyance. He did indeed tender to the selectmen a deed purporting to convey to the town that part (that is, one-half) of said bridge that lies in this state, and the selectmen refused to receive it. But the proposal was to convey "the bridge"— that is, the whole bridge—and certain roads leading to it; so that the deed tendered was not such an one as the plaintiff proposed to make, and for that reason, if for no other, the select men were justified in refusing to accept it. Besides, the plaintiff offered no evidence of any title to the bridge. And no inference can be drawn from any thing appearing in the motion, that he had any title in himself, or any power from any one who had, to make such conveyance. On the contrary, we think the natural inference from the facts found by the superior court is that he had no such title or authority. To "convey" real estate is, by an appropriate instrument, to transfer the legal title to it from the present owner to another. But however appropriate for the purpose the deed may be upon its face, such deed is of no avail to prove the conveyance of a title, or the tender of such conveyance, unaccompanied by proof of its execution by the real owner of the property, or some one duly authorized to execute it in his behalf. The failure of the plaintiff, therefore, to prove that he was the owner of the bridge which his deed purported to convey, was a failure to show the performance of a condition precedent on · which his right of action against the town depended.

Several other questions were presented by the counsel in their arguments before us, but as our determination of those already stated will dispose of the plaintiff's case, we refrain from their discussion.

A new trial is not advised.

In this opinion the other judges concurred.

New trial not advised.