*Court of Common Pleas, Dauphin County, January 3d, 1867.*

BERGNER ET AL. *v.* THE CITY COUNCIL OF HARRISBURG.

The mayor and city council have no power to bind the municipality to pay the expenses of a visit to their city by the President of the United States, or any other person or persons, although a resolution had been adopted by them, inviting him to come; and no such power is given by the charter of the city of Harrisburg. But the corporation is responsible for the pay of special policemen employed to keep order on such an occasion. The court will grant an injunction to prevent the payment of such claims, although articles have been furnished and expenses incurred on the faith of a resolution passed by the city council. Such injunction may be prayed for by any taxpayer; it need not be asked for by the attorney-general.

(Reynold *v.* The Mayor of Albany, 8 Barb. 597, and Ketchum *v.* The City of Buffalo, 4 Kern, 356, distinguished.)

BY THE COURT.—The bill in this case prays for an injunction to restrain the municipal authorities of the city of Harrisburg from paying certain bills due to individuals, on account of expenses incurred in the reception of the President of the United States, certain members of his cabinet, and the highest officers of the army and navy who visited this city last autumn, pursuant to a resolution adopted by said authorities on September 5th last, extending to them the hospitalities of the city. The amount is $838.63, for the most of which orders had been drawn on the treasurer, before notice of the application for an injunction, but no part thereof is yet paid. The first and main question presented by the bill and answer is, can the mayor and council bind the city for such expense?

Municipal, like other corporations, possess no powers except those expressly granted by the act of incorporation, by the general laws of the State, or such as are necessary for the purpose of carrying into effect the granted powers. And the general authority of a corporate body must be restricted by the nature and object of its institution; it can make no contract except such as is necessary, either directly or incidentally, to enable it to answer that purpose (Wilcox on Municipal Corporations, 769; Angel & Ames on Corporations, 59, 60; 3 Barn. & Ald. 11; 29 Conn. 356, 363; 1 Duer, 452; 2 Denio, 140; 2 Kent's Com. 298). Besides, corporations stand on an entirely different platform from individuals. The latter may do all acts, and make all contracts not inconsistent with the laws of society and their duty as members thereof. Whereas, the former, having been created for a *specific purpose,* can do no act, and make no contract, which is not necessary, either directly or incidentally, to enable it to answer that purpose (A. & A. on Corp. 139). Their powers of appropriation are limited; and hence when they undertake to apply public funds for purposes not authorized by their charter or by positive law, their acts, whether clothed with the form of legislation, resolution, or ordi-

[Bergner et al. *v.* The City Council of Harrisburg.]

nance, are without authority and void (Davis *v.* The City of New York, 1 Duer, 452; 1 Sandford, 29; 29 Conn. 356; Booth *v.* The Town of Woodbury, Law Registers of 1865–6, 202; 12 Cush. 103, 106; 1 Met. 284).

Under these well-settled principles, is there any general power in the city authorities to apply the money of the people to the purposes set forth in the bill? On this subject we have no direct decisions in our own State, but the question has been carefully considered in the highest courts of many of our sister States. In New York, the case of Hodges *v.* The City of Buffalo (2 Denio, 110) first brought this matter to the attention of the public. The corporation by resolution had authorized a supper and ball to be given on the fourth of July to entertain the citizens and certain invited guests; it was furnished, the bills sued for, and it was held that the persons furnishing could not recover, as there was no power in the city authorities to make such a contract, or pass such an ordinance. They cannot appropriate money by ordinance or resolution to any purpose of that kind. No express power is given, and none can be implied from the words of the charter authorizing them " to pass such ordinances and by-laws for the good government and order of the city, and the trade and commerce thereof, as shall be necessary to carry into effect the powers given to the council." Such an appropriation of public money is unauthorized. In Bayland *v.* The Mayor of New York (1 Sandford, 29), the correctness of the principles laid down in the foregoing case are fully recognized; and it is there reiterated that the corporation has no power, except as given by statute, or necessarily incidental thereto. And where the corporation by resolution had called a public meeting on State and National affairs, it was outside of the charter powers, was the mere unauthorized act of the mayor and members of council, not a municipal or corporate act, and the city was liable for no portion of the expenses thereof. The case referred to in 2 Denio is cited with approbation, and relied on as the law in 1 Duer, 452; 1 Comstock, 430. In Halstead *v.* The Mayor of New York (3 Comstock, 433), decided in the Court of Appeals, Pratt, J., says: " To judge from the conduct of municipal corporations alone, we would conclude that there was no limitation of their powers, at least their power of expending money and laying taxes. Until the case of Hodges *v.* The City of Buffalo was decided, nothing was more frequent than for city authorities to vote largess, and give splendid banquets for objects and purposes having no possible connection with the growth and wellbeing of the body politic, thus subjecting their constituency to unnecessary and expensive taxation. Since that decision it has generally been understood that their powers are more limited." It was then declared that where the corporation of the city attempted to vote money to indemnify their officers,

fined and subject to costs for neglect of duty, which they were required by a city ordinance not to perform, that such a vote of money was in violation of law, and entirely out of their power and jurisdiction. Thus the law may be considered as settled in New York.

We find similar doctrine enunciated by the courts of Massachusetts. In one of the latest books of reports in that State, it is held "that a town cannot appropriate money to celebrate the fourth of July" (1 Allen, 103). And no usage will justify it. Nor to expend money to celebrate the anniversary of the surrender of Cornwallis (Tash et al. *v.* The Treasurer of Natick, 10 Cushing, 252). Nor to vote money to purchase. uniforms for an artillery company, and will be restricted by injunction even after the uniforms had been purchased on the strength of the ordinance, and deposited in the armory of the company (Lee et al. *v.* The Town of Hopkinton, 4 Gray, 502). Nor can it appropriate money in time of war and danger of hostile invasion to give additional wages to the militia (Stetson *v.* Kempton et al., 13 Mass. 272). And it is said to be well settled in that State that a town will not be bound, even by the express vote of a majority, to the performance of contracts or other legal duties not coming within the scope of the objects and purposes for which they are incorporated (1 Metcalf, 286). Numerous other cases to the same effect might be cited. The same principle prevails in Connecticut. In The City of New London *v.* Bramard (22 Conn. 522), it is said : "Corporations have only such rights and powers as are expressly granted to them, or as are necessary to carry into effect the rights and powers so granted. Therefore, the city of New London has no power in its corporate capacity to appropriate money to celebrate Independence Day, and a tax-payer had a right to pray for an injunction ; and it is the proper remedy to restrain both the city and the treasurer." Where the State was bound to build a bridge (if there was an obligation in any one to build it), and the town voted money for the purpose, it was held that it had exceeded its power, and the contract to pay on its part was void, and could not be enforced (29 Conn. 356). That too where it was said that the bridge was of great utility to the citizens at large. Towns have no powers except such as are expressly granted to them by the legislative power of the State ; and therefore cannot grant gratuities to men drafted for the military service of the United States (Booth *v.* The Town of Woodbury, 5 Am. Law Reg., N. S. 202.)

Although we have had no cases involving the appropriation of money by municipal corporations for mere civic purposes brought before the Supreme Court of this State, yet we have had those embracing cognate principles. It has been held here, as in Connecticut, that independent of express legislative authority, there was no power in municipalities to apply money to the payment

of bounties to volunteers, to drafted men, or to relieve from the draft, and to render such application legal and valid, it must be shown to come strictly within the law. A borough or city could not, without special legislation, appropriate money towards building a railroad, or securing a nearer approximation to its limits, or levy a tax to pay such subscription (Brightly, 332). Or to the erection of steamships to start from the city (Pennsylvania Railroad *v.* Philadelphia, 11 Wr. 189). It was gravely doubted, in several reported cases, whether such corporations could subscribe to railroad stocks, even under the sanction of an act of Assembly, but decided that they could when so authorized (9 H. 147, 188). Judge Woodward says: " There is no congruity between such an enterprise (building a railroad) and the legitimate purposes of municipal corporations. They were designed to regulate the internal affairs of the places in which they were located. Police, health, streets, lanes, alleys, and the like, are the appropriate subjects of municipal administration" (9 H. 182). Our courts have always held corporations of all kinds to the strict letter of their charters or the powers conferred by general statutes. Some decisions have been referred to by the counsel of the respondents which are worthy of examination. In Reynold *v.* The Mayor of Albany (8 Barb. 597), it was held that, when the city was authorized by statute to procure and furnish a room for the use of the council, it could contract for a portrait of the governor as part of the furniture, it being discretionary with the municipality as to *how* it should be furnished, and it having been customary to procure such portraits as part of the furniture. Ketchum *v.* The City of Buffalo (4 Kem. 356), decides that, as the city was empowered to establish and regulate markets, it had, *incidentally,* the power to purchase the ground on which to build the market-house. In both of these cases, express power was conferred by statute to do the act; the manner of doing it was discretionary with the municipality. There is no pretence that this court can control the city council in doing or not doing acts left to their discretion; but the position is assumed by the orators here that there is no discretionary power, that the act is unauthorized, is outside of the municipal jurisdiction, and a mere usurpation. The Mayor of Colchester *v.* Linten (1 Ves. & Bea. 226), greatly relied on, arose on an effort to set aside a mortgage given by the city for the payment of money expended by an attorney in defending the mayor against suits brought on account of alleged improper conduct on his part. The claim of the attorney appears to have been much litigated, an award of arbitrators in his favor, and the mortgage given for the sum awarded. The chancellor declared that if the mortgage was given for a matter entirely outside of the corporation business and duties he could vacate it; but if at all within the power of the council, it could not be done after the award. The case was one

of doubt, and seems to conflict in some of its features with that in 3 Comstock, 433. We are not required to decide between them. To us it is very clear that the city of Harrisburg had no common-law power to appropriate money for the purposes stated in the bill; for however proper and commendable it may be in the citizens of this country to pay all due respect to the highest officers of the nation, they must do it as *citizens* and not as corporations. The funds necessary to meet the expenses must be furnished by the voluntary contributions of the citizens, those in favor of the demonstration, not wrung from the unwilling pockets of the people by taxation. If it can be for this, it may be for any other fête, the celebration of Independence Day, the battle of Gettysburg, or any other great event in our national history, and thus perhaps an unwilling people be obliged to pay for that in which they feel no interest. If the money can be voted for a civic feast on the advent of the chief executive, it may be for men in inferior stations, provided they have sufficient influence with the city authorities. There is certainly no well-established *custom* in Harrisburg which can be relied on, as this is perhaps the first occasion to call forth such a reception. If a discretionary power exists, it may be subject to gross abuse. The mayor and council, if so disposed, might feast themselves and their friends at the public expense, and refuse to suffer any others to participate. There is no discretion; it is outside of the corporate powers and duties, unless it comes within the words of the charter. Section 6 of the act of 19th of March, 1860, incorporating the city of Harrisburg, provides *inter alia,* that the council shall have power to "establish all such by-laws, ordinances, resolutions, and regulations, as they may deem necessary to preserve the peace, and promote the good order, government, and welfare of said city, and the prosperity and happiness of the inhabitants thereof; and the same to alter, amend, repeal, or revoke." This is the whole power of legislation conferred, and is almost in the words of the charter of Buffalo, commented on in 2 Denio, and very similar to those of other cities, whose power was held by the courts of the respective States, not to embrace appropriations of this character. It would be ostensibly more important for a town or city to have a railroad brought nearer to its limits, than to feast those who are strangers to the corporation, and have no interest in its welfare. It has been held that the city of Philadelphia could not authorize a railway to be laid on one of its streets, and the same is decided by the Court of Appeals under the charter of New York (4 Kernan, 506). Yet these things might be promotive of the prosperity and happiness of the inhabitants. The answer avers that the invitation to the chief magistrate and its acceptance, would be promotive of the welfare of the city, and the prosperity and happiness of a majority of the inhabitants thereof; but as the council in their

answer has not pointed out to the court how the prosperity of the
city was to be promoted thereby, we must take it as an empty
assertion to bring the vote within the words of the charter, which
can have no weight, in our judgment. The charter, in our opin-
ion, gives no authority to pass any ordinance or resolution such as
is here referred to, or to impose upon the inhabitants any portion
of the expense necessary to carry it into effect.

The payment of twenty-eight extra policemen comes within the
power of the city. It was the duty of the authorities, if they
apprehended the assembling of a large crowd of people, and con-
sequent disturbance, to provide in advance for the safety of the
citizens in their persons and property; it is one of the primary
objects of such corporations. This may be done whether the expected
gathering be a State or National convention, a mass meeting, the in-
auguration of a governor, the advent of the President of the
United States and his cabinet, or a menagerie or circus. From
whatever cause numbers of persons are congregated together, a
sound discretion may be used by the municipality as to the means
of preserving the public peace. The extra policemen must be
paid. The city might lawfully contract for arms to place in their
hands to preserve order, if the same was deemed necessary
(State of New York *v.* The City of Buffalo, 2 Hill, 434).

It is contended that where articles have been furnished, and
expenses incurred on the faith of a city ordinance or resolution,
equity will not interfere to prevent payment. In all of the cases
cited from the decisions of other States, the contract had been
completed on the one hand, yet the other was restrained from
payment, frequently by injunction. Those who deal with mu-
nicipal corporations, must see that they possess the power to
contract, else they may lose what they furnish, especially when it
does not go to the public benefit. Besides, if the money in the
present case had all been paid out, it would have been the bounden
duty of the city auditors to disallow the expenditure, and to
charge all of the corporation officers engaged in making it with
the amount thereof. There are many cases where *private* corpo-
rations have received the money or property of others, and not
been permitted to retain it, or withhold payment, although there
was the want of authority to contract originally. Yet I have
noticed but one case of a municipal corporation where the doctrine
applied, and that is reported in 10 Cushing, 252, and is put on
the ground of gross negligence, where equity will not interfere.
There is nothing in the answer tending to show that the com-
plainants knew that these guests were to be entertained at the ex-
pense of the city, or that any outlay was to be incurred. We
doubt the correctness of the principle enunciated in that case, as
bills for injunctions under like circumstances have been sustained

both in that State and our own, after the services were rendered, money lent, or expenses incurred.

It is also said that the orators in the present case are not to be heard. If the city authorities are about to expend public money in violation of their duty, the attorney-general alone can interfere. The attorney-general in Pennsylvania may stand as the representative of the State at large, but is not required to look after the interest of each city, borough, or township. The tax-payers of those corporations are alone interested, and every rated inhabitant has the right to ask the interposition of the judicial tribunals. It was not considered necessary to use the name of the attorney-general in the case of Sharpless *v.* The Mayor of Philadelphia, or Moers *v.* The City of Reading, already cited. Nor was it introduced in the case of certain citizens of Halifax township against the school directors thereof, where they were restrained from collecting a tax to pay expenses incurred in avoiding the draft, and a perpetual injunction was there granted, although the money had all been borrowed, and faithfully expended on the object for which it was raised (1 Pearson). This is unlike the usurpation of a franchise affecting the public at large, or the neglect of a duty by which the people may be injured, as in 14 Wright, 91. None can be affected here but the tax-paying citizens, and they alone have the right to complain. We were informed on the argument that the city of Philadelphia has frequently expended money for similar objects. That is quite possible; and the judges of New York in their opinion say that until the case of Hodges *v.* The City of Buffalo the matter had passed *sub silentio* in their State. Since it was brought before the courts, it is understood differently. The solicitor of the city of Philadelphia is said to have recently advised the council they had no authority by their charter to expend the public money for any such objects. With the character of the President's journey, the object of the city authorities in inviting him here, or the motive of those who oppose the expenditure, about all of which a good deal has been said, this court has nothing to do. We have viewed and decided the case as a mere question of law, and must treat it as we would any other unauthorized expenditure of public money. An injunction is granted.

*Simonton, for plaintiff.*

*Lamberton and Muench, for defendant.*