Williams, J.
The alleged lease which is the ■ foundation of the plaintiff’s action was for a term of five years or more. Its execution by the lessor was attested by but one witness, and there are imperfections in the description of the land. The instrument, in that form, was recorded in the lease record of the proper county, but neither the lessee nor the assignee entered into the possession of the land thereunder. Subsequent to its record, one of the defendants, with notice thereof and of the plaintiff’s claim thereunder, acquired title to the land by conveyance from the owner, and gave the other defendants, having like notice, a lease of the land for the development of natural gas and oil under which they held possession at the commencement of the action. The object of the suit is to obtain the reformation of the plaintiff’s so called lease by correcting the defects referred to, and then to have it enforced against the defendants. Notwithstanding these defects are alleged in the petition as the basis of the reformation sought, it is claimed in argument by counsel for the plaintiff that witnesses to the signature of the lessor are not essential to the valid execution of a lease to operate lands for natural gas and oil, though for a term exceeding three years, and, *30 therefore,, the instrument under which he claims is a valid lease conveying a legal estate in the lands, which needs no reformation in that respect. This claim is made on the ground that such leases are not within the purview of' section 4106 of the Revised Statutes, which requires that “a lease of any estate or interest in real property shall be signed by the lessor, and such signing shall be acknowledged by the lessor in the presence of two witnesses who shall attest the signing and subscribe their names to the attestation, and shall be acknowledged by the lessor” before a proper officer therein designated. The argument advanced in support of this contention is that, as the production of natural gas and petroleum by the methods now employed was unknown when this statute was enacted, leases of lands for such purposes were not then within the contemplation of the legislature, and not intended to be included in its provisions. There are other new uses in which real property has been employed since that statute was first enacted, uses unknoAvn at that time, and still others are likely to arise from time to' time in the future. The regulations prescribed by the statute for the legal execution of leases were adopted on account of the nature of the property conveyed by them, and not with respect to the character of the uses which the lessee might design to make of it. Hence, the statute was made general, so as to include, according to its express terms, leases “of any estate or interest in real property,” without regard to the nature of the lessee’s occupation or use of the same. Leases of lands for the development of natural gas and oil are not taken out of the operation of this statute, nor its requirements for their legal execution dispensed with, by the provisions of section 4132». That section relates to the *31 record of such leases, and the consequences of the failure to have them recorded, but contains no provision concérning their execution. The term “lease” is used in the section in its legal sense of an instrument demising real property for a limited term upon a reserved rental, executed in conformity with the general laAV on the subject. The section being silent as to the mode of execution of such leases, their execution is controlled by, and must be in accordance with the requirements of, section 4106. Atkinson v. Dailey, 2 Ohio, 213. So that, the attestation by two subscribing witnesses to the signature of the lessor, is as essential to thé valid execution of a lease of land for the development of oil or gas,, for a term exceeding three years, as it is to the execution of a lease for a like term for any other purpose.
The defectively executed instrument on which the plaintiff founds his action is, therefore, not a lease, and has no effect or operation as such. At most it is but a contract for a lease, which, whatever other rights and obligations it may create as between the parties to it, conveyed" no estate or interest in the land, and was not entitled to record. To give effect to it as a lease for a shorter term, or as a license, would be at variance with its express covenants and conditions, and the making of a new contract with different terms to which the parties never assented. No possession was taken under it, and it acquired no force or virtue by its entry of record which it did not possess before; nor were the rights of the plaintiff, in any way, thereby enlarged. A mortgage having but one attesting witness, or otherwise defective in execution, which has been entered of record, it has been repeatedly held by this court, is not better than *32 ©ne properly executed that has not been recorded; and the rights of the mortgagee, as against third persons, under the former, are no greater than under the latter. In White v. Denman, 16 Ohio, 59, it was held that a mortgage with but one subscribing witness, though entered of record, could not be reformed in equity so as to defeat a subsequent judgment lien. The now well settled doctrine on the subject, which is equally applicable to leases of the character here in question, is stated by Birchard, C. J., in the opinion in that case, as follows: “This instrument was not executed agreebly to the requisition of the statute, having but one subscribing witness, and therefore, without reformation, was ineffectual to pass any interest in the land. It could not take effect as a conveyance in any sense. As between the original parties to it, there is no difficulty in making the instrument effect the intended object; for equity would regard that as done which the parties agree to do. They intended it should operate as a valid incumbrance, and so far as they are concerned, it must be treated as a sufficient mortgage. But can it be so held, against intermediate judgment liens, to the prejudice of rights acquired by third parties? To this point we must therefore turn our inquiry. It cannot for a moment be maintained, that any legal estate was passed to the mortgagee by this defective conveyance. Mayham v. Coombs, 14 Ohio, 428, and Stansell v. Roberts, 13 Ohio, 148, are authorities to show that it could, as a mortgage, have no effect without recording under the statute, and the authorities are abundant to prove, that a defectively executed deed derives no efficacy from being placed on record. Lessee of Johnston v. Haines, 2 Ohio, 55, is directly to the point. From this it results, that at the time of the *33 rendition of all the judgments subsequent to the date of the defective mortgage, and prior to the filing of complainant’s bill, the claim of complainant did not affect the legal title, and did not create any equity in the land. The complainant cannot, therefore, be regarded as a purchaser of the interest then subsisting in the debtor. The most favorable light in which he can be viewed, in reference to judgment liens of third parties, is that of a party entitled by contract to have a legal lien upon the property for the security of his debt. His misfortune (perhaps his fault) is, that before he succeeded in completing his right by securing a valid lien, others more fortunate, by operation of law, have obtained vested interests in the disputed premises which interfere with him. We cannot aid him in correcting the error, which a little care would have prevented, by thrusting aside those who have equal equity, and the better legal claim. The complainant cannot be preferred to the judgment creditors, without establishing a precedent that will in effect give more efficiency, in a numerous class of cases, to a negligently executed and defective mortgage, than to one in all respects executed in compliance with law.” This decision was approved in Erwin v. Shuey, 8 Ohio St., 509, where it was held that: “An instrument intended for a mortgage, but defective because not under seal, though otherwise duly executed and recorded, creates no lien in favor of the intended mortgagee as against an assignee under a general assignment subsequently made for the benefit of creditors, although the assignee had full notice of such inténded mortgage.” In Van Thorniley v. Peters, 26 Ohio St., 471, 474, in holding that the. reformation of a recorded mortgage which had but one witness would not displace the lien of a judgment rendered between *34 the date of the execution and reformation of the mortgage, it is declared to have been settled by the former decisions of the court, that: “An unrecorded mortgage, or a defectively executed mortgage, whether recorded or not, does not vest in the mortgagee any interest in the premises, either legal or equitable, as against subsequent purchasers or judgment creditors of the mortgagor.” It was held in Straman v. Rechtine, 58 Ohio St., 443, that a recorded mortgage which had not been properly acknowledged, was, after the decease of the mortgagor, subordinate to the rights of the general creditors of his estate, and that its subsequent reformation could not affect their rights. Speaking of the effect of the record of such a mortgage, Burket, J., said: “The mortgage not having been acknowledged, it Avas defective and was not entitled to record, and the record thereof was a nullity, and was notice to no one, and bound no one.” And see Betz v. Snyder, 48 Ohio St., 492.
These cases, and others that might be cited, have indisputably established the principle that, a recorded mortgage Avhich lacks some requisite of legal execution, is not available for any purpose against a third person Avho subsequently acquires the title to, or an interest in, or a lien upon the property, and that, notice by him at the time, either actual or constructive, or both, however complete it may be, of the existence and record of such mortgage, imparts no Amine or efficacy to it. 'Phis seems necessarily to result from the statute Avhich requires all mortgages of real property to be recorded, and gives them effect only from the time they are delivered to the proper officer for record. It is obviously necessary, in order to obtainthateffect, that the instrument so delivered for record, shall be a mortgage, that is, an instrument having the requisites *35 of a mortgage executed as such instruments are required by law to be executed; for, if not so executed, it is not a mortgage, and does not become effective. Section 4112a of the Revised Statutes, requires that “all leases” of land for the development of natural gas or petroleum, “shall be recorded in the lease record in the office of the recorder of the proper county,” and “no such lease shall have any force or validity until the same is filed for record as aforesaid, except as between the parties thereto,” unless the person claiming thereunder is in actual and open possession of the land. This provision, it was held, in Gas Co. v. Tiffin, 59 Ohio St., 420, took such leases out of the operation of sections 4112 and 4134, and itself furnished the rule governing the registry of su ch instruments, and the effect upon their validity of the failure of registration. This provision, in that respect, it was there shown, is not substantially different from that relating to the registry of real estate mortgages and the consequences of omission to place them on record. As there said, the provision “is not less positive in its requirement that oil and gass leases shall be recorded as therein provided,” than is the statute with respect to the record of mortgages; and that, it “is even more explicit in its declaration that until properly filed for record they shall be without any force or effect except as between the parties to them, unless the person claiming thereunder is in the actual and open possession of the lands.” In vieAV of this substantial identity of these statutory regulations, the rule that had long obtained in cases of unrecorded mortgages was applied, in that case, to an unrecorded lease for operating lands for natural gas and oil; and it was accordingly held that, until such a lease is filed for record as required by *36 section 4112®, it “is without any effect, either at law or in .equity, as against a subsequent lessee, or licensee, or other third person acquiring an interest in, or lien on the land, although he took with notice of such prior unrecorded lease or license, unless the person claiming thereunder was, at the time, in the actual possession of the land.” The analogy holds good throughout; and, for the same reason, the rule that defeats the operation of defectively executed mortgages that find their way on record, is applicable to leases of this nature lacking , legal execution, that are placed upon record.
In the argument some stress has been placed on the presence, in section 4133, of the phrase “executed agreeably to the provisions of this chapter,” and its absence from section 4112®. But it has not the importance which counsel have attributed to it. The “lease,” the record of which is required by the latter section, is an instrument having all the legal requisites of a lease, as well in its mode of execution, as in its terms and conditions; and unless it possesses those qualities, whatever else it may be, it is not a lease having the right of record, and its entry thereon accomplishes nothing. There can be no valid record of an invalid instrument.
The further claim is made in argument that the petition does not show the defendant Esselstein acquired the legal title to the land, nor that the other defendants obtained a valid lease from Mm. The allegations of the petition in these respects are, in substance, that the “owner” of the land “conveyed” the same to the defendant Esselstein, and the other defendants entered into its possession and are operating the same for oil and gas, under an instrument executed to them by Esselstein who had acquired its *37 ownership. Since the ownership of land can only be conveyed by deed made in conformity with the law, the term “conveyed,” used in reference to the transfer of lands by the owner to another person, fairly imports that the conveyance is by a legally executed deed which transfers the whole title. To convey real estate, is to transfer the legal title to it from the owner to another by an appropriate instrument. Abendroth v. Greenwich, 29 Conn., 365. Land is conveyed only when the title to it passes. Fairfax v. Lewis, 11 Leigh (Va.), 248. A conveyance is a deed which passes or conveys land from one person to another. Brown v. Fitz, 13 N. H., 285. Jacobs, L. D. The Century dictionary defines the word “convey,” to mean in law, “to pass title by deed;” and the word “title” to mean the “ownership, absolute ownership, the unincumbered fee.” So that, the petition sufficiently shows,’ that Essel stein acquired the title to the land by legal conveyance, and that the possession of his tenants was lawfully held. Certainly, if there were imperfections in the defendáis’ title, or other facts which gave the plaintiff a superiority of right, their existence should have been pleaded in the petition.
Counsel for the plaintiff have cited the case of the Allegheny Oil Co. v. Snyder, 45 W. L. B., 53; as sustaining Ms claim to the relief demanded. The instrument there involved purports to be a lease for a term of two years, and as long thereafter as oil or gas should be found in paying quantitites; and it contained the provision that, if no well should be drilled on the land within two years from its date, is should be null and void unless the lessee should pay for further delay, a rental of one dollar per acre, at or *38 before tbe expiration of each year thereafter. The execution of the instrument was attested by but one subscribing witness, and it was so recorded. After it was recorded, but before possession was taken under it, the lessor executed to another person having notice thereof, a lease of the same lands which the court finds was duly acknowledged and recorded; and possession was taken and held thereunder by the second lessee. The court gave priority" to the first lease, holding it was superior to the second, and sustained an injunction against operating the land for oil or gas under the latter. Whether the first lease should be construed to be for a definite term of two years only, and the stipulation for its continuance thereafter upon payment of the annual rental, which was entirely at the lessee’s option, as equivalent to an agreement for a renewal of the lease for a year at a time, if the lessee should choose to exercise his option, the court does not consider nor determine. If that is its proper construction, upon which we express no opinion, it might be held to come within a class of leases referred to in section 4112 of the Revised Statutes, to the valid execution of which sub-, scribing witnesses are unnecessary. The decision, however, treating the first lease as defective in its execution for lack of proper attestation, is placed entirely on the ground that, being a good contract for a lease, it created an equity in favor of the lessee which should prevail over the subsequently validly executed and recorded lease, because the latter was taken with notice of the existence and record of the former one, which, was accordingly given priority. We are unable to concur in that view. It rests wholly upon the application, to oil and gas leases, of the rule *39 that obtained in equity with respect to purchasers with notice, before the enactment of our recording statutes, and which has been preserved to a limited extent by section 4134; and the only cases cited in its support, were either governed by the provision now contained in that section, or arose before the adoption of the recording act. It was established by the decision in Gas Co. v. Tiffin, supra, as has already been shown, that leases for the production of gas or oil were taken out of the operation of that section, and consequently out of the equity rule referred to, by the provisions of section 4112a, and that, withou/t a proper record of a prior lease of that kind or actual possession of the premises under it, it is nugatory and ineffectual for any purpose, both at law and in equity, as against a subsequent lessee or other third person dealing with the land, notwithstanding he had, at the time actual notice of the prior lease. And it is the purpose of the decision in the present case to establish, that a defectively executed lease of the character in question, which has been placed upon record, is in the same category as if it were unrecorded, and is equally without effect against subsequent lessees and purchasers. As we have attempted to show, it can make no difference in principle, nor according to the authorities, whether the want of a proper record results from the defective execution of the instrument, by reason of which it is not entitled to record though enterd thereon, or from the voluntary withholding of a properly executed lease from the record. In the case cited by plaintiff’s counsel, this question does not appear to have been presented to, or considered by the court, nor the Ohio cases upon the question called to its attention. However that may be, we are *40 satisfied that, under our statutes, and the former decisions of this court, the facts stated in the petition of the plaintiff do not entitle him to the relief sought, and the demurrer was properly sustained.

Judgment affirmed.

Minshall. C. J., Burkkt. Spear, _ Shauck and Davis, JJ., concur.