METTET, Plaintiff, v. CITY OF YANKTON, et al Defendants

(25 N. W.2d 460)

(File No. 8907. Opinion filed December 11, 1946.)

**John E. Walsh,** of Yankton, and **Gale B. Braithwaite,** of Sioux Falls, for Plaintiff.

**W. W. French, H. A. Doyle,** and **Frank Biegelmeier,** all Yankton, for Defendants.

PER CURIAM.

Following our decision in Danforth v. City of Yankton et al., S. D., 25 N. W.2d 50, the city commission by resolution decided to proceed with the purchase and acquisition of the bridge. The present plaintiff requested and was granted permission to commence this proceeding in this court wherein it is sought to prevent the city from taking any further action with reference to the purchase of the bridge. We refer to the former decision for a statement of facts. Any additional facts necessary to a decision upon any issue will appear under our discussion of such issue.

Does the issuance of the bonds pursuant to Ch. 118, Laws of 1945, and Ordinance 92 constitute a debt of the city of Yankton within the meaning and application of Sec. 4, Art. XIII of the Constitution of South Dakota?

■ Sec. 4, Art. XIII of the Constitution provides, so far as here material: "The debt of any * * * city * * * shall never exceed five (5) per centum upon the assessed valuation of the taxable property therein, for the year preceding that in which said indebtedness is incurred. * * *." It is admitted that $700,000, the amount of the bonds, exceeds 5% of the assessed valuation of the taxable property of the city of Yankton. We hold that the bonds do not constitute a "debt" within the meaning of this constitutional provision. These bonds are revenue bonds issued under the provisions of SDC 45.2404 to SDC 45.2418, both inclusive. The ordinance authorizing the bonds and the bonds issued thereunder recite, "This bond is neither payable from nor a charge upon any funds other than the revenues of the bridge pledged to the payment thereof, as hereinbefore stated, and no holder or owner hereof or of any of the interest coupons hereunto appertaining shall ever have the right to compel any exercise of the taxing power of said city to pay this bond nor the interest thereon, nor enforce payment against any property of said city, nor shall this bond constitute a charge, lien or encumbrance upon any property or credit of said city other than the revenues of said bridge as aforesaid."

It is apparent that these bonds do not constitute a gen-

eral obligation of the city. The only source of payment is the revenue from the operation of the bridge which the statute makes the exclusive source of payment and which the ordinance requires shall be kept separate from other city funds, and from such revenue it is contemplated the bonds shall be paid. The ordinance requires that these revenues be placed in certain designated accounts for the purpose of paying interest, principal and the costs of operation and maintenance, but the ordinance specifically provid that the requirement to pay into the separate accounts for the different purposes shall relate only to revenue derived from the bridge and shall be * * * without any obligation of said city to make such payments from any other corporate funds. * * *" This court has aligned itself with the overwhelming weight of judicial opinion in holding that bonds of the type and character of those here involved do not constitute a debt within the meaning of Sec. 4, Art. XIII of the Constitution of this state. Gross v. City of Bowdle et al., 44 S. D. 132, 182 N. W. 629; State College Development Ass'n. v. Nissen, 66, S. D. 287, 281 N. W. 907; Annotations 146 A. L. R. 328; 96 A. L. R. 1385; 72 A. L. R. 687.

■■ Under the terms of the bonds the city has obligated its officers subject to and in accordance with the provisions of the ordinance to the performance of certain duties in the operation and maintenance of the bridge to maintain a schedule of tolls sufficient to meet the obligations incurred in the purchase and operation of the bridge. With reference to the toll charges the ordinance provides that the initial schedule of tolls shall be the schedule prevailing at the time of acquisition of the bridge. The ordinance further provides "Whenever it becomes apparent that the schedule of tolls then in effect is insufficient to provide adequate revenues to meet the requirement of law and this ordinance such schedule of tolls shall be revised in such manner and to such extent as may be recommended by an engineer or firm of engineers of national reputation and having experience in toll bridge traffic problems to be appropriate to balance any appparent deficiency."

We think it clear that none of these provisions create

a general obligation on behalf of the city; the city does not agree that the revenues of the bridge will be sufficient to meet all obligations, it simply agrees that its officers will perform the duties with respect to tolls prescribed by the ordinance. The city does not become a surety or guarantor for the payment of the debt. If the officers perform their duties and the revenues are then not sufficient to meet all obligations there is no general liability on the part of the city under the terms of either the ordinance, statute or contract. We should not assume that the city officers will negligently or arbitrarily fail to perform their duties, but should such assumption be indulged such failure would not create a debt on behalf of the city within the meaning of the constitutional limitation. At the most such neglect on the part of the city officers might give rise to an action for damages against the city. See City of McLaughlin, S. D., v. Turgeon, 8 Cir., 75 F.2d 402. Whether the holding in the City of McLaughlin v. Turgeon case would be applicable in the event of a negligent failure of the city officials to perform the duties prescribed by the ordinance, we, of course, do not now decide. The case is cited simply in support of our holding that no present debt, within the constitutional limitation, is created by the issuance of these purely revenue bonds under this ordinance which obligates the city to the performance of certain duties in connection with the tolls and operation and maintenance of the bridge. The obligation to perform these duties does not create a debt within the meaning of the constitutional limitation; whether the negligent failure to perform these duties might give rise to an action for damages is not of present concern.

Section 4 of the Act declares that a toll bridge is a "utility," and provides that SDC 45.24 is "Hereby made applicable to the purchase, acquiring, maintaining or operating such bridges and, except as may be otherwise provided in this Act, the municipality, county or their governing bodies shall have all the powers and may do all the acts and things therein set out as provided in said sections, and all the provisions of such sections are made applicable to toll bridges." Plaintiff contends that these provisions of the Act violate Art. III, § 21 of the State Constitution which

states: "No law shall embrace more than one subject which shall be expressed in its title."

The title states that this is: "An Act to Authorize the Governing Bodies of Certain Public Corporations, To Purchase, Acquire, Maintain and Operate Interstate Toll Bridges Across Streams and Rivers; to Issue Bonds Therefore, Payable Only From the Revenues of Such Toll Bridges Without Liability Against Such Public Corporations: To Create a Bridge Commission: To Prescribe the Duties and Powers of the Governing Bodies of Such Public Corporations and of such Bridge Commission and to Make the Provisions of Sections SDC 45.2404 to SDC 45.2418 Both Inclusive, Applicable Thereto."

■ The subject of the Act, as expressed in this title, is the purchase, acquisition, maintenance and operation of interstate toll bridges across streams and rivers, by public corporations. This is a single subject. To be valid within the meaning of the constitutional provision quoted above, all the provisions of the Act must relate to that subject. "They must be parts of it, incident to it, or in some reasonable sense auxiliary to the object in view." State v. Morgan, 2 S. D. 32, 48 N. W. 314, 317; State ex rel. Johnson v. Youngquist, 69 S. D. 592, 13 N. W.2d 296.

■ The provisions of the statute referred to above, which classify a municipally owned interstate toll bridge as a public utility, and authorize the city to borrow money for the purchase of it, secured solely by the revenue of the bridge according to the terms of the general statute relating to revenue bonds, are germane to the subject of the Act as expressed in the title. Wheelon v. South Dakota Land Settlement Board, 43 S. D. 551, 557, 181 N. W. 359, 14 A. L. R. 1145.

■ Plaintiff contends that Section 4 of the Act referred to above amounts to an attempt by the legislature to amend or re-enact Ch. 45.24 of the Code relating to Revenue Bonds. This is not an amendatory act such as the one under consideration by this court in the case of Schomer v. Scott, 65 S. D. 353, 274 N. W. 556. Neither is it a re-enactment of the revenue bond law. Rather, it is a "Reference Statute."

Section 4 refers to the revenue bond law and makes its provisions applicable to the subject of the new Act. The provisions of the revenue bond law are germane to the subject expressed in the title of Ch. 118, S. L. 1945. This method of legislation is as effectual as though the revenue bond law had been re-enacted as part of the new Act. Chicago Motor Club v. Kinney, 329 Ill. 120, 160 N. E. 163; Garland v. Hickey, 75 Wis. 178, 43 N. W. 832; Trimmier v. Carlton, 116 Tex. 572, 296 S. W. 1070; 59 C. J., Statutes. §§ 168, 460.

 Part of this bridge is situated in the State of Nebraska, and it is therefore contended that the purchase of the bridge by the city is an illegal attempt to extend the territorial jurisdiction of the city into the state of Nebraska. The power to construct and maintain public highways, including bridges thereon, is primarily in the state, and this power is exercised by the state in its sovereign capacity. Bank of Idaho v. Malheur County, 30 Or. 420, 45 P. 781, 35 L. R. A. 141; Abendroth v. Town of Greenwich, 29 Conn. 356; Evans v. City of Sheboygan, 153 Wis. 287, 141 N. W. 265, 45 L. R. A., N. S., 98; International Bridge Co. v. People of State of New York, 254 U. S. 126, 41 S. Ct. 56, 65 L.Ed. 176. The state also has the power to hold property, real or personal, in the state of Nebraska. McLaughlin v. City of Chattanooga, 180 Tenn. 638, 177 S. W.2d 823; Dodge v. Briggs, C. C., 27 F. 160. If it appears to the legislature that interstate bridges are necessary for the use of the public it is the business of the state to provide for their construction, though one end of the bridge is necessarily located in another state. Abendroth v. Town of Greenwich, supra. This power of the state is subject to the consent of the state of Nebraska, which consent has been given. Ch. 96, S. L. Neb. 1945. And where the bridge crosses a navigable stream it requires the authorization of Congress, which has been granted. Ch. 108, Laws of the 66th Congress, 41 Stat. 355. The ownership of the bridge, half of which is in the state of Nebraska, is not an extension of the soverignty of the state of South Dakota beyond its territorial limits. The state as an owner is to be treated in Nebraska like any other proprietor.

State ex rel. Peterson v. Bently, 216 Minn. 146, 12 N. W.2d 347; Dodge v. Briggs, supra. The City of Yankton is a public corporation, and the state has the power to delegate to it the authority it possesses to purchase, acquire, maintain and operate the bridge in question with all attendant obligations. In re City of Boston, 221 Mass. 468, 109 N. E. 389; Daly v. City and Town of New Haven, 69 Conn. 644, 38 A. 397; Miller v. Hungton & Ohio Bridge Co., 1923 W. Va 320, 15 S. E.2d 687.

We cannot sustain the claim that the provisions of the 1945 Act authorizing the governing body of a municipality or county acquiring an interstate bridge to create a bridge commission constitutes an unconstitutional delegation of legislative power. The bridge commission is declared by the Act "To be an agency of the public corporation creating it." (See. 5, Ch. 118, Laws 1945). If the governing body wishes to proceed by the creation and appointment of a commission to operate and maintain a bridge acquired under the Act, we think that the Constitution offers no obstacle to the conferring of such authority upon the governing body.

This original proceeding, including the temporary restraining order issued herein, is dismissed on the merits without costs to either party. Judgment will be entered accordingly.

POLLEY, J., not sitting.