[Civ. No. 15668.   First Dist., Div. One.   Feb. 4, 1954.]

GEORGE BETTENCOURT, Appellant, v. STATE OF CALIFORNIA et al., Respondents.

Jacobsen & Tobin and Harold W. Tobin for Appellant.

Edmund G. Brown, Attorney General, John E. Fourt, Deputy Attorney General, Robert E. Reed, Harry S. Fenton and Ropers & Majeski for Respondents.

BRAY, J.—Plaintiff, in an action for personal injuries, appeals from a judgment sustaining defendant State of California's demurrer without leave to amend.

### QUESTIONS PRESENTED

1. Can the court take judicial notice of the character of the operation of the Dumbarton Bridge by the State of California?

2. Is that operation governmental or proprietary?

### COMPLAINT

The complaint alleged that defendant State of California, together with the other defendants, operated and maintained "that certain bridge and highway" between the counties of Alameda and San Mateo, commonly known as Dumbarton Bridge. It then alleges that defendants carelessly maintained the bridge in a defective and dangerous manner known to all defendants; that on a certain day when the lift span was raised no warnings were given or barriers raised, causing plaintiff's car to smash into the steel and concrete center roadway, injuring plaintiff. Defendant State of California

demurred primarily on the ground that the operation of the bridge was a governmental function and that the state is not liable in tort for negligence in the discharge of such function in the absence of the state's consent to such liability, and California has given no such consent.

### OPERATION OF TOLL BRIDGE GOVERNMENTAL?

The trial court took judicial notice of the fact that although originally the Dumbarton Bridge was a matter of private enterprise under franchise, at present it is operated for tolls, by the state, through its Toll Bridge Authority, and the character of its operation is governmental and not proprietary. Plaintiff contends that the trial court erred in taking such judicial notice.

"Courts take judicial notice of . . . 3. Public and private official acts of the . . . executive . . . departments of this state . . ." (Code Civ. Proc. § 1875.) Dumbarton Bridge was purchased and is maintained and operated by the California Toll Bridge Authority under the provisions of the California Toll Bridge Authority Act, sections 30000-30506, Streets and Highways Code. ". . . the Authority is in reality the State of California." (*Fowler* v. *California Toll Bridge Authority*, 46 F. Supp. 299, 301, affd. 128 F.2d 549.) Thus, it is obvious that the court may take judicial notice of the character of the operation. Such operation is the official act of the Toll Bridge Authority as specified in the act.

Moreover, the fact that the toll bridge is operated by the Authority is a matter of such general common knowledge that the court may take judicial knowledge of it under the well known rule that courts may take judicial knowledge of what is, or ought to be, generally known within their jurisdiction. (See *People* v. *Tossetti*, 107 Cal.App. 7 [289 P. 881].) In *Varcoe* v. *Lee*, 180 Cal. 338 [181 P. 223], in a well reasoned discussion of the rule, the court lays down three material requisites: (1) The matter must be a matter of common and general knowledge. (2) It must be "known," that is, well established and authoritatively settled. (3) It must be known within the limits of the jurisdiction of the court. (P. 345.) The operation of the Dumbarton Bridge meets all three requisites.

### DUMBARTON BRIDGE GOVERNMENTAL?

The character of the operations of the California Toll Bridge Authority has already been determined in *Fowler* v. *California Toll Bridge Authority, supra,* 46 F.Supp. 299,

301: ''In all its functions, the Authority is representing and assisting the State in the performance of a traditional governmental function, that of building, operating and maintaining bridges and highway crossings as a part of the government system of state highways. The Authority is not a distinct and separate entity embarked upon a profit making commercial enterprise in competition with private citizens. The Authority owns no property. . . . The Authority does not act in any proprietary capacity. All of its acts are done for and on behalf of the State of California in the performance of a traditional governmental function.''

█ *Yonker* v. *City of San Gabriel*, 23 Cal.App.2d 556 [73 P.2d 623], pointed out that all authorities agree that the management, control, construction and maintenance of public highways is a governmental function as distinguished from any proprietary undertaking or business carried on by the public body. (To the same effect, *Fowler* v. *California Toll Bridge Authority, supra*, 46 F.Supp. 299, 301; *Kansas City Bridge Co.* v. *Alabama State Bridge Corp.*, 59 F.2d 48.)

█ ''Highway'' includes ''bridges.'' (Sts. & Hy. Code, § 23.) The power to construct bridges over navigable streams is included in the power to construct highways. (*Southlands Co.* v. *City of San Diego*, 211 Cal. 646, 664 [297 P. 521].) The enforcement and administration of the California Toll Bridge Authority Act is a part of the highway program of the state and all necessary expenditures therefor are payable out of the state highway fund. (Sts. & Hy. Code, § 30809.)

█ The duty to provide and maintain a bridge as a part of a public highway, and to operate a suitable draw in the bridge for the benefit of the public highway up and down the stream are governmental functions. (*Daly* v. *City & Town of New Haven*, 69 Conn. 644 [38 A. 397]; *Sylvester* v. *City of Milwaukee*, 236 Wis. 539 [295 N.W. 696]; *Evans* v. *City of Sheboygan*, 153 Wis. 287 [141 N.W. 265, 45 L.R.A. N.S. 98]; *Mettet* v. *City of Yankton*, 71 S.D. 435 [25 N.W.2d 460]; *Bremer* v. *City of Milwaukee*, 166 Wis. 164 [164 N.W. 840]; *Arkansas State H. Com.* v. *Southwestern Bell T. Co.*, 206 Ark. 1009 [178 S.W.2d 1002, 1005]; *Groenewold* v. *Board of County Com'rs*, 195 Okla. 526 [159 P.2d 258]; *Berglund* v. *Spokane County*, 4 Wn.2d 309 [103 P.2d 355]; *Lyons* v. *Bottlofsen*, 61 Idaho 281 [101 P.2d 1]; *Price* v. *Sims*, 138 W.Va. 173 [58 S.E.2d 657].) In *Naumburg* v. *City of Milwaukee*, 146 Fed. 641 [77 C.C.A. 67], contrary to the above

decisions, a divided federal court held that the operation of a drawbridge by the city was "not a governmental but a corporate duty" and therefore the city was liable for negligence in its operation. In *Evans* v. *City of Sheboygan, supra,* 141 N.W. 265, also a Wisconsin case, the court discussed the Naumburg case, approved the minority opinion and refused to follow the majority decision. *Sylvester* v. *City of Milwaukee, supra,* 295 N.W. 696, followed the ruling in the Evans case and completely ignored the Naumburg case.

▌ Nor does the fact that tolls are charged change the character of the state's function. In *Sears* v. *Tuolumne County,* 132 Cal. 167 [64 P. 270], it was held that a toll bridge is a part of the public highway. In *Talley* v. *Northern San Diego Hosp. Dist.,* 41 Cal.2d 33, 39 [257 P.2d 22], it was held that the fact that the district charged fees for hospital service did not make the operation of the district's hospital a proprietary function. "The imposition of a charge for service is not inconsistent with the exercise of a governmental function. [Citations.] Neither is the profit or nonprofit phase of the activity engaged in determinative of either a proprietary or a governmental function. [Citations.] The test is whether the particular activity in which the governmental agency is engaged at the time of the injury is of a public or a private nature. [Citations.]" (Talley case, p. 39.)

Other than *Naumburg* v. *City of Milwaukee, supra,* 146 Fed. 641, which as we have heretofore pointed out has been rejected by succeeding decisions of the state to which it applied, plaintiff has cited no case holding that the operation of a toll bridge by a public agency is a proprietary function. His contention seems to be that because prior to its acquisition by the state it was operated as a private enterprise and would be competing with other privately owned toll bridges if any there are, its operation ought to be considered proprietary as in the case of the State Belt Railroad, which in *People* v. *Superior Court,* 29 Cal.2d 754 [178 P.2d 1], was held to be operated by the state in a proprietary capacity. In that case the court discussed at some length the doctrine of sovereign immunity, and held that the facts that the expense of operation was primarily a burden on industry and commerce, and that the business of transportation for hire is usually undertaken by private individuals or corporations and not by government, support the conclusion that the operation of a railroad is not in the exercise of a governmental

function but constitutes a commercial or business enterprise. These facts are not true of a toll bridge operated as part of our state highway system. Bridges have always been regarded in California as a part of our highways. There is no resemblance between their operation and that of a state operated railroad. Maintenance and operation by public agencies of publicly owned bridges, toll and otherwise, have always been regarded as a governmental function.

Plaintiff urges that as this is a first case in which a California court has been called upon to determine the status of the operation of toll bridges by the Toll Bridge Authority, and as the tendency in modern times is to narrow and even eliminate the doctrine of sovereign immunity, we should establish a rule denying such sovereignty to such toll bridge operation. While there is much to be said for the fairness of holding the state, and its agencies, to liability for negligence in such operation, the matter is one for the action of the Legislature rather than of the courts, particularly in view of the fact that operation of bridges is a "traditional governmental function." (*Fowler* v. *California Toll Bridge Authority, supra,* 46 F.Supp. 299, 301.)

The latest discussion concerning the difference between governmental and proprietary functions occurs in *Guidi* v. *State of California,* 41 Cal.2d 623 [262 P.2d 3], where the court considered most of the California cases on the subject, and held that the state, although possibly immune from negligence in connection with agricultural and educational activities at the State Fair, was not immune for negligence in the course of setting off fireworks and maintaining the horse arena there, for the reason that the latter activities do not differ from those of private enterprise in the entertainment industry, and hence the state as to these activities was acting in a proprietary capacity. There is nothing in the Guidi case contrary to our holding here. Obviously there is no resemblance between the state operating a toll bridge as a part of its highway system and setting off fireworks or operating a horse arena.

Section 16041, Government Code, prescribes that anyone having a claim against the state for negligence shall present his claim as prescribed. This section presupposes a claim permitted by law. It is merely procedural and is not itself a consent section nor a waiver of sovereign immunity. It necessarily applies only where the consent of the state has been provided elsewhere.

The fact that the state in its operation of the Dumbarton Bridge is acting in its governmental capacity brings the case within the doctrine set forth in *Talley* v. *Northern San Diego Hosp. Dist., supra,* 41 Cal.2d 33, as there is no statutory departure from the doctrine. ■ ''It is generally recognized that when acting in its governmental capacity a sovereign may not be sued except where the doctrine has been specifically departed from by constitutional or statutory law.'' (P. 36.) (See, also, *People* v. *Superior Court, supra,* 29 Cal.2d 754; *Gillespie* v. *City of Los Angeles,* 114 Cal.App.2d 513 [250 P.2d 717].)

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.