[Civ. No. 10098. Third Dist. May 26, 1961.]

PACIFIC INTER-CLUB YACHT ASSOCIATION (a Corporation), Appellant, v. T. H. RICHARDS, JR., et al., as Members of the Wildlife Conservation Board, Respondents.

J. Warren Manuel for Appellant.

Stanley Mosk, Attorney General, and Ralph W. Scott, Deputy Attorney General, for Respondents.

WARNE, J. pro tem.*—This is an appeal from the summary judgment in a taxpayer's suit seeking to enjoin the

*Assigned by Chairman of Judicial Council.

respondent members of the Wildlife Conservation Board of the State of California from appropriating funds from the Wildlife Restoration Fund to pay part of the cost of a highway bridge.

The complaint alleges that the respondent members of the Wildlife Conservation Board, which is an agency of the State of California, were acting in excess of their authority and in an arbitrary and illegal manner by appropriating $125,000 from the Wildlife Restoration Fund to provide one-half of the cost of a highway bridge across Montezuma Slough in Solano County. It is further alleged that this appropriation was made pursuant to an agreement between the Department of Fish and Game of the State of California and Solano County whereby each party was to provide one-half of the cost of the bridge. It is also alleged that after completion the bridge was to be maintained by Solano County.

Respondents urge that the issue raised by appellant's action is now moot as the Montezuma Slough bridge has been completed and accepted, notice of completion has been recorded, and the ferry which formerly afforded transportation across Montezuma Slough is no longer operative. It is further asserted that the bridge is now open to public use and that a large sum of money due under the contract between the Department of Fish and Game and Solano County had been paid. In support of these factual representations respondents set forth as an appendix to their brief the certificate of acceptance and a certification by the state controller showing that $104,503.94 had been paid by the state pursuant to the agreement mentioned.

While the court may take judicial notice of the fact that the bridge has been completed (*McPheeters* v. *Board of Medical Examiners*, 74 Cal.App.2d 46 [168 P.2d 65] ; *Bettencourt* v. *State*, 123 Cal.App.2d 60 [266 P.2d 201, 43 A.L.R.2d 545] ), we, nevertheless, prefer not to base our decision in this case on the ground that the issues involved are moot since other questions remain involving the validity of the contract in question and the payment of money made pursuant thereto.

It is well established that all contracts entered into by the state, or its agencies, must be authorized by statute (*Miller & Lux* v. *Batz*, 131 Cal. 402 [63 P. 680]) and all such unauthorized agreements and contracts are null and void. (Const., art. IV, § 32.) Where the contract is void a right of action exists in the state to recover money paid to a contractor and a state is not estopped to deny the validity

of such a contract even where it has received the benefit of full performance. (*Paterson* v. *Board of Trustees,* 157 Cal. App.2d 811 [321 P.2d 825] ; 45 Cal.Jur.2d 436.) The question of the validity or invalidity of the agreement in this case is essentially one of law.

■ ''Summary judgment is proper only when the facts set forth by the affidavits of the moving party, if true, would sustain a judgment in his favor and the affidavits of the opposing party do not present legally triable issues of fact. [Citing cases.]'' (*Estate of Kelly,* 178 Cal.App.2d 24, 28 [2 Cal.Rptr. 634].) ■ And if the opponent's affidavits raise no genuine issue of material fact, but only create an issue of law, summary judgment is proper. (*Bank of America etc. Assn.* v. *Casady,* 15 Cal.App.2d 163 [59 P.2d 444].)

■ The affidavits in support of the motion for summary judgment show that a Grizzly Island Waterfowl Management Area was established by the Wildlife Conservation Board; that the purpose of this project is to perpetuate the waterfowl resources of the state through provisions for nesting and feeding grounds for migratory waterfowl; that other purposes include the reduction of waterfowl depredation on agriculture and the provision of shooting areas for the public; that a related program undertaken by the board is the angling access project, the purpose of which is to provide the general public with access from the Grizzly Island project to public waters for fishing; that the Montezuma Slough bridge is considered by the Wildlife Conservation Board to be a part of, and incidental to, the projects mentioned.

An affidavit executed by Robert D. Montgomery in support of the motion avers that access to the Grizzly Island area was by way of a ferry across Montezuma Slough prior to 1960; that in order to reach Grizzly Island many hunters had a 12 to 15-hour wait for the ferry and the result was that usage of the area dropped and the full potential use of the area both for hunting and fishing had not been realized.

Exhibit E incorporated into the affidavit of Raymond J. Nesbit filed in support of the motion for summary judgment sets forth excerpts from minutes of the Wildlife Conservation Board on September 23, 1959. This exhibit recites the long history of traffic problems in the area, and also states that the cost to the Department of Fish and Game for expenses to ease the situation at that time amounted to $5,400 annually and that the loss of hunting fees at Grizzly Island was estimated to be $3,000 to $10,000 annually. The minutes

also state that angler access to Grizzly Island was impaired at all seasons.

Excerpts from the minutes also show that substantial sums of money were unanimously allocated for the construction of the Montezuma Slough bridge by the board, and the affidavit of William A. Jones filed in support of the motion states that the proposed bridge (subsequently erected) ''is 926 feet, 8 inches in length and 26 feet in width; it affords two lanes of vehicular travel; . . .; its load capacity is such that twenty-ton trucks may pass over without danger; . . .''

The appellants filed two affidavits opposing the motion wherein it is averred that the proposed bridge would link public highways and that it would cost less money to construct a narrower bridge, having a lower load limit, which would be sufficient to support passenger automtobiles and a 10-ton truck. Thus even giving a liberal construction to the counteraffidavits to the motion as the law requires (*Eagle Oil & Ref. Co.* v. *Prentice*, 19 Cal.2d 553 [122 P.2d 264]), there is nothing stated therein which denies the averments in the affidavits filed in support of the motion. Therefore no triable issue of fact was raised in the trial court.

 The purpose of the wildlife conservation laws are stated in section 1301 of the Fish and Game Code, which reads in part as follows: ''The preservation, protection and restoration of wildlife within the State is an inseparable part of providing adequate recreation for our people in the interest of public welfare; . . . To carry out these purposes, a single and coordinated program for the acquisition of lands and facilities suitable for recreational purposes, and adaptable for conservation, propagation, and utilization of the fish and game resources of the State, is established.''

 The duties of the Wildlife Conservation Board are set out in section 1345 of the Fish and Game Code, which provides in part, ''The board shall investigate, study, and determine what areas within the State are most essential and suitable for wildlife production and preservation, and will provide suitable recreation; . . .'' Section 1346 provides in part that ''The board shall also ascertain what lands are suitable for providing cover for the propagation and rearing in a wild state of waterfowl, . . .'' Section 1347 provides in part that ''As a result of such studies the board shall determine what areas, lands, or rights in lands or waters should be acquired by the State in order to effectuate a coordinated and balanced program resulting in the maximum revival of

wildlife in the State. . . ." And section 1348 expressly authorizes, among other things, the acquisition of such lands.

Section 1350 of the Fish and Game Code directs the Department of Fish and Game, on authorization of the Wildlife Conservation Board, to construct facilities. This section reads as follows:

"The department shall, when authorized by the board, construct in accordance with law such facilities as are suitable for the purpose for which the lands or rights in land or water, or water rights were acquired. Each completed unit of the program shall be managed and maintained by the department.

"The department, with the approval of the Department of Finance, may enter into agreements with any other department or agency of this State, a county, city, public corporation, or public district of this State, to provide for the construction, management or maintenance of the facilities authorized by the board, and such other department or agency of this State, county, city, public corporation, or public district are, and each of them is, hereby authorized to construct, manage, or maintain such facilities pursuant to such agreement. . . ."

And section 1354 of the Fish and Game Code provides: "The board may authorize the acquisition of such lands or rights in lands as may be necessary for the purpose of furnishing public access to lands or waters open to the public for fishing, hunting and shooting. . . ."

Section 1350 expressly allows the construction of facilities incidental to the maintenance and operation of a wildlife project, and the Grizzly Island projects are clearly within this provision.

One of the purposes of the Wildlife Conservation Act is to acquire and restore to the highest possible level, and maintain in a state of high productivity, those areas that can be most successfully used to sustain wildlife and which will provide adequate and suitable recreation for our people in the interest of public welfare. (Fish & G. Code, § 1301.) To carry out such a purpose the necessary incident is the building of access roads or bridges. There is nothing in the law which excludes the general public from using such facilities. To the contrary, the act itself contemplates such use.

Appellant contends that because the general public will also use the Montezuma Slough bridge it becomes a highway bridge with no connection to the wildlife projects. Such an interpretation is without merit and would tend to frus-

trate one of the purposes of the statute, that is, access for recreation.

Appellant contends that section 1354 of the Fish and Game Code is the only authority contained in the act allowing the expenditure of funds for "access" purposes. We do not agree. Section 1350 authorizes the construction of "facilities . . . suitable for the purpose for which the lands or rights in land or water, or water rights were acquired." The Montezuma Slough bridge is clearly such a facility.

Further, there is nothing in section 1354 inconsistent with section 1350. Section 1354 authorizes the acquisition of land "for the purpose of furnishing public access . . ." This implies the construction of roads and bridges subsequent to acquiring such real property. Section 1348 invests the board with power to provide for access roads, hence the doctrine of *expressio unius est exclusio alterius* has no application in this case.

Appellants have failed to make any showing to establish that the Wildlife Conservation Board's action was in any way fraudulent or arbitrary, but rather the affidavits clearly show that the board was exercising its discretion and authority in deciding to appropriate funds for the construction of the bridge. Such discretion is not subject to judicial review unless fraudulently or corruptly exercised. (11 Cal. Jur.2d 459, 460; *Nickerson* v. *County of San Bernardino,* 179 Cal. 518 [177 P. 465].)

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.