**UNITED STATES of America,**
**Plaintiff,**

v.

**Ray ANDREWS, Ruth E. Andrews, Lester Schafer, and Charlotte Schafer, Defendants and Cross-Claimants,**

v.

**La Von E. WRIGHT, Defendant.**

No. 2277.

United States District Court
D. Idaho, E. D.

Dec. 1, 1961.

Sylvan A. Jeppesen, U. S. Atty., Boise, Idaho, for plaintiff.

Robert W. Bennett, Pocatello, Idaho, for cross-claimants Lester & Charlotte Schafer & Ray & Ruth E. Andrews.

Clark Gasser, Pocatello, Idaho, for defendant La Von E. Wright.

FRED M. TAYLOR, District Judge.

On August 10, 1960, at or about 11:45 a. m., the defendant, La Von E. Wright, was drilling a well near Gibson Jack Creek in a part of the Caribou National Forest, Bannock County, State of Idaho. It was a very warm and dry day. The defendant's well drilling equipment was located in a field of highly combustible cheat grass. The grass in the immediate working area had, for the most part, been trampled into the dirt as defendant had been working there for several days. On this particular occasion defendant broke a bolt on his well drilling outfit and, finding a replacement that was too long, decided to cut it off with an acetylene torch. His cutting equipment was located in his pickup truck approximately 25 feet from his well drilling rig. He went over to the truck and put the tail gate down, using it as a shield over which he did the cutting. He held the bolt with pliers and cut it in an operation that took less than a minute. As he cut the bolt, he noticed that the grass under his feet had caught fire. He tried to stamp the fire out with his feet, but this method was unsuccessful. Then he turned off the torch and ran for a shovel some 30 feet away. However, by the time he returned the fire was out of control. In a matter of minutes local law enforcement officers and Forest Service personnel were on the scene and the task of suppressing the fire was underway.

The fire spread rapidly over the rolling hillsides which were covered with dry grass and dotted with juniper trees. A call for volunteer fire fighters were made to the local county citizens and approximately 320 men responded. Fire lines were established with their aid and the assistance of five bulldozers. By 8:30 p. m. the following day the fire was brought under control and most of the volunteers went home, leaving the mopping up exercises to the professionals. The fire was officially declared out on August 29th, but the defendant's problems were only beginning.

An investigation into the cause of the fire was undertaken simultaneously with the task of suppressing it. Believing it his civic duty, the defendant made a signed statement on August 12th, readily admitting his part. Photographs were taken of the site of the fire's origin and the burnt area by Forest Service investigators. Tests were conducted to determine whether a spark from an acetylene torch would ignite cheat grass. The investigators also satisfied themselves that said grass was highly inflammable under similar conditions, a fact also evidenced by the several hundred acre fire which occurred. This investigation culminated in this lawsuit filed by the Government against the defendant on May 26, 1961. Jurisdiction was properly based on 28 U.S.C.A. § 1345. Ray Andrews, Ruth E. Andrews, Lester Shafer annd Charlotte Schafer were also made defendants. They all owned property that was damaged by the fire and had previously filed suit against defendant Wright in the state court. It appears that at the time of the fire, and presently, said defendant was and is having financial difficulties. According to his counsel, his liabilities exceeded his assets and he could not pay his debts as they matured. Hence, the Government joined the other defendants to establish its priority to any money available to the defendant Wright in the event its lawsuit was successful, pursuant to 31 U.S.C.A. § 191. In turn said defendants filed cross-complaints against defendant Wright.

This controversy was tried before the Court without a jury on November 9, 1961. The parties presented their evidence and elected to argue orally to the Court in lieu of submitting written briefs. After hearing said arguments, the Court took the matter under advisement.

The sole question of liability is whether the defendant Wright conducted himself as a reasonably prudent man under the circumstances. The defendant's ac-

tions have already been recited by the Court. There is little more to add except, perhaps, that he did have a fire extinguisher in his truck and a large tank of water nearby which could have been used for fire fighting purposes. Both the plaintiff and defendant Wright produced expert witnesses to testify in regard to the reasonableness of said defendant's conduct. Plaintiff's witness, an experienced welder, testified that defendant should have "mulched the area to the bare earth" for a radius of 20 feet around the cutting area. He testified that the sparks caused by the cutting operation would have rebounded from the tailgate over a large area and remained hot for seconds. The particular cutting operation, he estimated, would have taken less than a minute.

Defendant's expert witness testified that the defendant had taken "reasonable precautions" under the circumstances. Using the tailgate as a surface and cutting at an angle, as defendant testified he did, would have caused the sparks to rebound into the bed of the truck, according to this witness.

■■ What a reasonable man would have done under the circumstances is, of course, a question left to the trier of fact, in this instance, the Court. Certainly an extremely cautious man who was about to cut a small bolt over the tailgate of a truck in an operation taking less than a minute would have probably taken the time, fifteen minutes or more, to clear an area over a radius of twenty feet or forty feet in diameter, then placed a shovel, fire extinguisher and water within arms length. However, this is too much to expect even of the reasonable man. The Court does believe, nevertheless, that reasonable prudence should have dictated a course of procedure somewhat more cautious than was taken by the defendant under the circumstances. He should have, at least, cleared a little of the area around, and especially under, the tailgate where the fire broke out. He should have had some means readily available to extinguish a possible fire. Defendant expressed the belief in his written statement that if he had had the shovel at hand he "could have stopped the fire." The Court believes his failure to take such minimum precautions constituted negligence which was the proximate cause of the damages sustained by plaintiff and cross-claimants.

■ The Government seeks a recovery in the amount of $24,616.68, its costs and expenditures for suppressing the fire and restoration of the burned area (Plaintiff's Exhibit No. 8.) Its witnesses testified that these costs and expenditures were reasonable and necessary. Almost half of said amount is attributable to wages paid volunteer workers under circumstances which casts some doubt on the necessity of these expenditures. A defense witness testified that he was called to the fire by a friend to protect some private property in the path of the fire. He, in turn, obtained the aid of several of his employees. They went to the fire area, signed some "slips of paper" which they believed admitted them to the fire area and worked most of the night. Some time after this witness had performed his labors he was called into the local Forest Service office where he learned for the first time that he was to be paid for his services. Until then he believed he had performed a civic duty and was assisting a friend in protecting his property. His willingness to accept this gratuity was matched only by the Forest Service's willingness to incur the expense, which, of course, was to be charged against the defendant anyway. Another such payment was made to defendant's counsel. There was no evidence to the effect that anyone refused to be compensated for their efforts and the final sum amassed as wages paid to the volunteer fire fighters reached $10,959.59. Undoubtedly there were some who expected to be paid and it was not feasible for the defendant to parade the 320 volunteers to the witness stand to ascertain whether all of the expenditures for wages were necessary. In the instance where it was shown, however,

that the wage paid was in the nature of a gratuity and not necessary, plaintiff's recovery will be reduced in that amount.

■ Defendants and cross-claimants, Lester and Charlotte Schafer, proved, without opposition, that the value of their property before the fire was from $2,500 to $3,000 for each of nine lots. After the fire their expert witness testified the lots were worth only $1,000 to $1,500 each. The damage done to the lots consisted primarily of the burning of juniper trees, making them less attractive for residential purposes. The lots contained little or no improvements. The Court finds that these cross-claimants suffered damages in the sum of $9,000.

■ Defendants and cross-claimants, Ray and Ruth E. Andrews. seek to recover damages for the loss of a fence on their land. The fence was built in 1952 and had an estimated life of 25 years. A new fence was estimated to cost between $800 and $1,000. Considering the lesser figure and depreciation, the Court finds these cross-claimants suffered damages in the sum of $600.

■ As for the alleged priority of the government, it is the opinion of this Court that plaintiff has failed to establish any right thereto under 31 U.S.C.A. § 191.

Accordingly, it is the opinion of this Court that judgment should be entered for the plaintiff and against the defendant, La Von E. Wright, on plaintiff's complaint in the sum of $24,596.78; and for the cross-claimants, Ray Andrews and Ruth E. Andrews, and against the defendant, La Von E. Wright, on their cross-complaint in the sum of $600; and for the cross-claimants, Lester Schafer and Charlotte Schafer, and against the defendant, La Von E. Wright, on their cross-complaint in the sum of $9,000.

Counsel for the plaintiff shall prepare Findings of Fact, Conclusions of Law and a proposed Judgment, submit copies of the same to counsel for the defendants and the originals to the Court.