**UNITED STATES of America,**
**Plaintiff,**

v.

**STATE OF CALIFORNIA, Defendant.**

**Civ. No. 62–521–WM.**

United States District Court
S. D. California,
Central Division.

Sept. 14, 1962.

Francis C. Whelan, U. S. Atty., James R. Akers, Jr., Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Stanley Mosk, Atty. Gen. of California, Joan D. Gross, Deputy Atty. Gen., Sanford Guskin, Deputy Atty. Gen., Los Angeles, Cal., for defendant.

MATHES, District Judge.

Plaintiff United States of America invoked the jurisdiction of this Court under 28 U.S.C. § 1345, seeking damages from defendant, the State of California, by reason of alleged negligence on the part of employees of the State in causing, and in failing to extinguish, a fire which destroyed trees and other vegetation covering approximately 24,000 acres within Angeles National Forest in the County of Los Angeles, California.

It is alleged in plaintiff's complaint that "on November 21, 1957, the * * Division of Highways of the State of California was engaged in constructing a highway upon lands of the United States of America, within the Angeles National Forest"; that at said time and place an employee of the State Division of Highways negligently kindled a fire in a warming stove while aiding in the road construction; that the foreman of the highway construction crew, "acting within the scope of his employment", ordered the crew members to leave the construction site, and strong winds in the highway area thereafter overturned the stove, causing the fire to spread into the adjacent forest; that shortly thereafter other employees of the State Division of Highways arrived, attempted to extinguish the blaze, "but did so negligently", with the result that the fire continued to rage, and the Federal Government was "compelled to expend the approximate sum of $455,194.43 to suppress said fire". It is also alleged that "plaintiff sustained damages to national forest resources".

At a hearing held in response to an order to show cause why the action should not be dismissed pursuant to Rule 12(h) of the Federal Rules of Civil Procedure, 28 U.S.C. the State of California asserted sovereign immunity to suit in this Court upon the claim here alleged.

■ It has long been the rule in California that the State is immune from private suit, based upon negligent conduct of its agents, where the public activity involved is deemed essentially "governmental" in nature. [See: People v. Superior Court, 29 Cal.2d 754, 761–762, 178 P.2d 1, 5, 40 A.L.R.2d 919 (1947); Plaza v. City of San Mateo, 123 Cal.App.2d 103, 106, 266 P.2d 523, 525 (1954).] Road construction by California's Division of Highways has been held to be a "governmental" function, as distinguished from a "proprietary undertaking or business". [See Bettencourt v. State, 123 Cal.App.2d 60, 63, 266 P.2d 201, 203, 43 A.L.R.2d 545 (1954); cf.: Gibson Properties Co. v. City of Oakland, 12 Cal.2d 291, 301, 83 P.2d 942, 947

(1938); Yonker v. City of San Gabriel, 23 Cal.App.2d 556, 558–559, 73 P.2d 623, 624 (1937).] And since the cause of action here asserted by the Federal Government accrued in November of 1957, California would be clearly immune from suit under the circumstances alleged, had the action been brought by a private individual in the State court. [Cal.Civ. Code § 22.3; see Corning Hospital Dist. v. Superior Court, 57 A.C. 529, 370 P.2d 325, 20 Cal.Rptr. 621 (1962); and see: Cal.Gov.Code, §§ 800–803, § 1953, § 53051.]

The question for decision, then, and one of first impression it appears, is whether a Federal district court has jurisdiction, at the suit of the Federal Government, to impose liability upon a State for damages caused by allegedly tortious conduct of the State's agents, in a case where the State is an involuntary defendant—is sued without sovereign consent.

█ Since any Federal court possesses "no other jurisdiction than that conferred by the Constitution and laws of the United States, the presumption is that a cause is without its jurisdiction unless the contrary affirmatively appears". [Grace v. American Cent. Ins. Co., 109 U.S. 278, 283, 3 S.Ct. 207, 27 L.Ed. 932 (1883); see: McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Minnesota v. Hitchcock, 185 U.S. 373, 382, 22 S.Ct. 650, 46 L.Ed. 954 (1902).] As Mr. Chief Justice Ellsworth pointed out in the beginning: "A circuit [district] court * * * is of limited jurisdiction: and has cognisance, not of cases generally, but only of a few specially circumstanced, amounting to a small proportion of the cases which an unlimited jurisdiction would embrace. And the fair presumption is (not as with regard to a court of general jurisdiction, that a cause is within its jurisdiction unless the contrary appears, but rather) that a cause is without its jurisdiction, until the contrary appears." [Turner v. Bank of North America, 4 U.S. (4 Dall.) 8, 11, 1 L.Ed. 718 (1799); Shamrock Oil & Gas

Co. v. Sheets, 313 U.S. 100, 108–109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941).]

Underlying all Congressional enactments dealing with Federal-court jurisdiction is Article Three of the Constitution, which declares, *inter alia*, that: "The judicial Power shall extend * * * to Controversies to which the United States shall be a Party * * *." [U.S. Const. art. 3, § 2, cl. 1.] The same Article divides this judicial power among the Federal courts, providing in the first instance that the Supreme Court of the United States shall have original jurisdiction "In all Cases * * * in which a State shall be Party * * *" [U.S.Const. art. 3 § 2, cl. 2; see Georgia v. Pennsylvania R. Co., 324 U.S. 439, 464, 65 S.Ct. 716, 89 L.Ed. 1051 (1945)]; for it was thought that the establishment of a high court, with its consequent authority to determine controversies involving States of the Union, was "essential to the peace of the Union". [Principality of Monaco v. Mississippi, 292 U.S. 313, 328 (1934), 54 S.Ct. 745, 78 L.Ed. 1282.]

Indeed, Alexander Hamilton, at the time of New York's ratification convention in 1788, urged that: "In cases in which a state might happen to be a party, it would ill suit its dignity to be turned over to an inferior tribunal." [The Federalist No. 81, at 548 (Cooke ed. 1961).]

However, the question soon arose whether the "original jurisdiction" granted by the Constitution to the Supreme Court was meant to be exclusive. [See: United States v. Ravara, 2 U.S. (2 Dall.) 297, 1 L.Ed. 388 (1793); Osborn v. President, etc., of Bank of United States Bank, 22 U.S. (9 Wheat.) 738, 821, 6 L.Ed. 204 (1824).] And by 1884 the Supreme Court had held that the Court's original jurisdiction is "not necessarily exclusive, and * * * the subordinate courts of the Union may be invested with jurisdiction" by the Congress, in cases concerning consuls or vice-consuls of foreign governments. [Börs v. Preston, 111 U.S. 252, 256–257, 4 S.Ct. 407, 28 L.Ed. 419 (1884).]

The proposition that the Congress has the power to confer original jurisdiction

upon inferior Federal courts, concurrent with that conferred by the Constitution upon the Supreme Court, was grounded largely upon this fact: that the First Congress, the leading members of which had recently come from the Constitutional convention, in effect assumed the prerogative by including in the first Judiciary Act the provision that the Supreme Court "shall have exclusive jurisdiction of all controversies of a civil nature, where a state is a party, except between a state and its citizens; and except also between a state and citizens of other states, or aliens, in which latter case it shall have original but not exclusive jurisdiction. * * *" [Judiciary Act of 1789, § 13, 1 Stat. 80 (1789); cf.: Williams v. United States, 289 U.S. 553, 573–574, 53 S.Ct. 751, 77 L.Ed. 1372 (1933); Ames v. Kansas, 111 U.S. 449, 464, 4 S.Ct. 437, 28 L.Ed. 482 (1884).]

This Congressional pronouncement of 1789 was in substance re-enacted in the Judicial Code of 1911 [36 Stat. 1156 (1911)], and was retained in 28 U.S.C. § 341 until revision in 1948. [See 28 U.S.C. § 1251.]

Moreover, the First Congress, while declaring in § 13 that the Supreme Court generally had exclusive jurisdiction of all cases wherein a State was a party, at the same time expressly conferred upon the circuit (trial) courts of the United States original jurisdiction of "all suits of a civil nature * * * where * * * the United States are plaintiffs * * *." [Judiciary Act of 1789, § 11, 1 Stat. 78 (1789).]

Throughout their long history, the trial courts of the United States have retained this same "original jurisdiction" of all civil cases wherein "the United States are plaintiffs". [See: Act of March 3, 1875 § 1, 18 Stat. 470, as amended, 24 Stat. 552 (1887) and 25 Stat. 434 (1888); Judicial Code of 1911, § 24, 36 Stat. 1091 (1911); 28 U.S.C. § 41(1), as amended, id. § 1345 (1948).] So it is that § 1345 of Title 28 of the United States Code now stipulates that: "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States * * *." [Ibid.]

The grant to Federal trial courts of "original jurisdiction of all civil action * * * commenced by the United States" has never been displaced, but has always existed concurrently with the grant to the Supreme Court of exclusive original jurisdiction of civil cases where a State is a party. And what appears gradually to have evolved is the view that the Supreme Court has always retained exclusive original jurisdiction of all civil actions commenced by the United States against a State, excepting only those cases wherein the Congress has, by grant within the ambit of Constitutional power, specifically conferred concurrent jurisdiction upon the Federal district courts. [Cf.: Case v. Bowles, 327 U.S. 92, 97, 66 S.Ct. 438, 90 L.Ed. 552 (1946); United States v. California, 297 U.S. 175, 187–188, 56 S.Ct. 421, 80 L.Ed. 567 (1936); Alabama v. United States, 304 F.2d 583, 584 (5th Cir.1962); United States v. Montana, 134 F.2d 194, 196 (9th Cir.), cert. denied, 319 U.S. 772, 63 S.Ct. 1438, 87 L.Ed. 1720 (1943); Minnesota v. United States, 125 F.2d 636, 639 (8th Cir.1942); California v. United States, 91 F.Supp. 722, 723 (N.D.Cal.1950); compare United States v. Louisiana, 123 U.S. 32, 8 S.Ct. 17, 31 L.Ed. 69 (1887).]

Consistent with this view, Federal district courts have assumed original jurisdiction also of civil actions wherein a State was a party and the matter in controversy was such as to call for protection and enforcement of Federal rights and powers under the supremacy clause [see U.S.Const. art. 6, cl. 2] against encroachment by a State, as where the Federal taxing powers [see New York v. United States, 326 U.S. 572, 66 S.Ct. 310, 90 L.Ed. 326 (1946)], or the Federal war powers [see United States v. City of Philadelphia, 56 F.Supp. 862 (E. D.Pa.1944), aff'd, 147 F.2d 291 (3rd Cir.), cert. denied, 325 U.S. 870, 65 S.Ct. 1410, 89 L.Ed. 1989 (1945)], were threatened. [See also: Board of Trus-

tees of University of Illinois v. United States, 289 U.S. 48, 53 S.Ct. 509, 77 L.Ed. 1025 (1933); United States v. Newhard, 128 F.Supp. 805 (W.D.Pa.1955); United States v. Ingram, 99 F.Supp. 465 (E.D. Ark.1951), rev'd on other grounds, 203 F.2d 91 (8th Cir.), cert. denied, 345 U. S. 995, 73 S.Ct. 1136, 97 L.Ed. 1402 (1953); United States v. Lewis, 10 F. Supp. 471 (W.D.Ky.1935).]

Indeed, the *cause celebre* of Ames v. Kansas, supra, 111 U.S. 449, 4 S.Ct. 437, 28 L.Ed. 482, was just such a case. There, the United States Supreme Court held that a suit brought by Kansas in the highest court of that State was subject to removal to the Federal circuit [district] court, over the objection of the State, since the matter in controversy (the validity of a railroad consolidation authorized by Act of Congress) arose under the laws of the United States, "the supreme Law of the Land". [See: U.S.Const. art. 6, cl. 2; Ames v. Kansas, supra, 111 U.S. at 470–472, 4 S.Ct. 437, 28 L.Ed. 482.] So the oft-cited dictum of Mr. Chief Justice Waite, to the effect that the Congress possesses power to vest inferior Federal courts with concurrent jurisdiction "in cases where the Supreme Court has been vested by the Constitution with original jurisdiction" [Ames v. Kansas, supra, 111 U.S. at 469, 4 S.Ct. at 446], must always be viewed *ex integro* "in connection with the case in which those expressions are used". [See: Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 399, 5 L.Ed. 257 (1821); Armour & Co. v. Wantock, 323 U.S. 126, 132–133, 65 S.Ct. 165, 89 L.Ed. 118 (1944); Julian Petroleum Corp. v. Courtney Petroleum Co., 22 F.2d 360, 362 (9th Cir. 1927).]

With the 1948 revision of the Judicial Code, there was enacted § 1251, entitled "Original Jurisdiction", which provides that:

"(a) The Supreme Court shall have original and exclusive jurisdiction of:

"(1) All controversies between two or more States * * *

"(b) The Supreme Court shall have original but not exclusive jurisdiction of: * * *

"(2) All controversies between the United States and a State * * *." [28 U.S.C. § 1251.]

By this revision, there was included in the non-exclusive category of Supreme Court jurisdiction "All controversies between the United States and a State". [28 U.S.C. § 1251(b) (2).] It has been suggested, moreover, that this legislative change may have eliminated, perhaps unwittingly, the necessity for further enactment by the Congress to confer upon Federal district courts concurrent jurisdiction in civil actions brought against a State by the Federal Government, and that 28 U.S.C. § 1345 can now properly be construed to subject the States generally to the jurisdiction of the inferior Federal courts in actions brought by the United States, to the extent Constitutionally permissible. [See: Reviser's Note to 28 U.S.C.A. § 1251; Hart & Wechsler, The Federal Courts and the Federal System 228 (1953); Wagner, The Original and Exclusive Jurisdiction of the United States Supreme Court, 2 St. Louis U.L.J. 111, 117 (1952).]

In keeping with this view, the United States urges here that, inasmuch as the original jurisdiction of the Supreme Court has now been declared by the Congress to be non-exclusive as to "All controversies between the United States and a State" [28 U.S.C. § 1251(b) (2)], the longstanding grant to the Federal district courts of "original jurisdiction of all civil actions * * * commenced by the United States" [28 U.S.C. § 1345] necessarily extends by implication to actions, such as the case at bar, brought by the United States against a State.

It is significant to note, however, that no material change in language was made upon enactment in 1948 of § 1345 as successor to 28 U.S.C. § 41(1). [See Reviser's Note to 28 U.S.C.A. § 1345.] So the fact that the original jurisdiction of the Supreme Court was declared in

the revision to be non-exclusive with respect to "controversies between the United States and a State" [28 U.S.C. § 1251] does not argue the conclusion that 28 U.S.C. § 1345 and its predecessor-provisions should now be taken to include actions based upon the tortious conduct of a State's agents. To the contrary, such a construction must be rejected, not only because of serious doubts as to Constitutional validity, later to be mentioned, but also because re-enactment in the revision of the language contained in § 1345 is persuasive evidence itself that this section should continue to be interpreted "as before construed". [Cf.: Johnson v. Manhattan Ry. Co., 289 U.S. 479, 500, 53 S.Ct. 721, 77 L.Ed. 1331 (1933); Van Vranken v. Helvering, 115 F.2d 709, 710 (2nd Cir. 1940), cert. denied, 313 U.S. 585, 61 S.Ct. 1095, 85 L.Ed. 1541 (1941).]

"As before construed", 28 U.S.C. § 1345 has been held to provide the jurisdictional basis for actions in tort brought by the United States against private individuals. [See: United States v. Borin, 209 F.2d 145, 148 (5th Cir.), cert. denied, 348 U.S. 821, 75 S. Ct. 33, 99 L.Ed. 647 (1954); United States v. Butt, 203 F.2d 643 (10th Cir. 1953); United States v. Silliman, 167 F.2d 607, 610 (3rd Cir.), cert. denied, 335 U.S. 825, 69 S.Ct. 48, 93 L.Ed. 379 (1945); Pooler v. United States, 127 F. 519, 520 (1st Cir. 1904); United States v. Andrews, 206 F.Supp. 50 (D.Idaho 1961); cf. United States v. Sayward, 160 U.S. 493, 16 S.Ct. 371, 40 L.Ed. 508 (1895); and see Cotton v. United States, 52 (11 How.) 229, 231, 13 L.Ed. 675 (1850).]

Too, the provisions of § 1345 have been held to include, within the original jurisdiction of Federal district courts, actions brought by the Federal Government against States as involuntary defendants, where the matter in controversy involved the protection and enforcement of the interests of the United States in real property in accordance with Federal law [see United States v. Washington, 233

F.2d 811, 813–814 (9th Cir. 1956); and see: Brewer-Elliott Oil & Gas Co. v. United States, 260 U.S. 77, 79, 43 S.Ct. 60, 67 L.Ed. 140 (1922); Utah v. United States, 304 F.2d 23 (10th Cir. 1962); United States v. Carbon County Land Co., 46 F.2d 980, 987 (10th Cir. 1931), aff'd, Utah v. United States, 284 U.S. 534, 52 S.Ct. 232, 76 L.Ed. 469 (1932); United States v. Ladley, 51 F.2d 756 (D. Idaho 1931)], notwithstanding that such actions have also long been prosecuted as a matter of course in the United States Supreme Court. [See: United States v. California, 332 U.S. 19, 67 S. Ct. 1658, 91 L.Ed. 1889 (1947); United States v. West Virginia, 295 U.S. 463, 55 S.Ct. 789, 79 L.Ed. 1546 (1935); United States v. Oregon, 295 U.S. 1, 55 S.Ct. 610, 79 L.Ed. 1267 (1935); United States v. Minnesota, 270 U.S. 181, 46 S.Ct. 298, 70 L.Ed. 539 (1926); United States v. Michigan, 190 U.S. 379, 23 S. Ct. 742, 47 L.Ed. 1103 (1903); United States v. Texas, 143 U.S. 621, 12 S.Ct. 488, 36 L.Ed. 285 (1892); see also United States v. North Carolina, 136 U.S. 211, 10 S.Ct. 920, 34 L.Ed. 336 (1890).]

[3]   But extensive research has failed to reveal a single decision, throughout the long history of 28 U.S.C. § 1345 and its predecessors, construing the grant of jurisdiction "of all civil actions * * * commenced by the United States" to include within Federal district-court jurisdiction actions brought by the United States against a State as involuntary defendant to recover, as here, damages based upon mere tortious conduct of agents of the State. [Compare City of Newark v. United States, 254 F.2d 93 (3rd Cir. 1958).] To compel a State to submit to such an action in a district court of the United States would, indeed, deprive the Constitutionally-prescribed apportionment of jurisdiction among the Federal courts of any effective meaning at all [see U.S.Const. art. 3, § 2, cls. 1 and 2], in the face of the long-accepted qualification that the Congress can "neither enlarge nor restrict the original jurisdiction" of the Supreme Court.

[California v. Southern Pacific Co., 157 U.S. 229, 261, 15 S.Ct. 591, 39 L.Ed. 683 (1895); see Marbury v. Madison, 5 U. S. (1 Cranch) 137, 173–174, 2 L.Ed. 60 (1803).]

■ From the birth of this Nation, it has been recognized that "States of the Union, still possessing attributes of sovereignty, shall be immune from suits, without their consent, save where there has been 'a surrender of this immunity in the plan of the convention' ". [Principality of Monaco v. Mississippi, supra, 292 U.S. at 322–323, 54 S.Ct. at 748; see The Federalist No. 82, at 553–554 (Cooke ed. 1961) (Hamilton).] And there has been accorded to the States protection "from the compulsory process of any court other than one suited to their high positions". [Ames v. Kansas, supra, 111 U.S. at 465, 4 S.Ct. at 444.]

■ Furthermore, since State immunity is "like that of the United States" [United States v. Minnesota, supra, 270 U.S. at 195, 46 S.Ct. at 301], the "surrender of this immunity" within the scope of the Constitution should never be lightly implied. [Soriano v. United States, 352 U.S. 270, 276, 77 S. Ct. 269, 1 L.Ed.2d 306 (1957).] Otherwise, the question of what "attributes of sovereignty" are retained by a State upon entry into the Federal Union would surely be reduced to the status of an academic exercise.

There has been no claim that California, by entry into the Union, consented under the Constitution to submit to the jurisdiction of a Federal district court in an action by the United States for damages allegedly caused by tortious conduct of the State's agents. Nor is it contended that any Constitutional right or power of the Federal Government— any "supreme law of the land"—has been threatened or impaired by the State of California in the circumstances at bar. It therefore appears that California, having made no waiver, may steadfastly rely upon a State's Constitutional right of sovereign immunity from suit by the United States in this Court on the claim here asserted.

Section 1345 of Title 28 of the United States Code should always be read with the admonition in mind that: "A restrictive meaning for what appear to be plain words may be indicated by the Act as a whole, by the persuasive gloss of legislative history or by the rule of constitutional adjudication * * * that such a restrictive meaning must be given if a broader meaning would generate constitutional doubts". [United States v. Witkovich, 353 U.S. 194, 199, 77 S. Ct. 779, 1 L.Ed.2d 765 (1957); see: International Ass'n of Machinists v. Street, 367 U.S. 740, 749, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961); Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L. Ed. 598 (1932); Karseal Corp. v. Richfield Oil Corp., 221 F.2d 358, 365 (9th Cir. 1955).]

There is no mention in the language of § 1345 of a State as a party defendant, while § 1251(b) merely describes in general terms the non-exclusive nature of the Supreme Court's jurisdiction. So there is nothing in the language of these provisions to compel the inclusion of a State as involuntary defendant within the original jurisdiction of the Federal district courts, in an action brought by the United States upon a claim for damages caused by alleged tortious conduct of agents of the State.

■ I am of the opinion therefore that both the language and the legislative background of 28 U.S.C. §§ 1345 and 1251(b), as well as serious Constitutional doubts as to the power of the Congress to do otherwise, require that "a restrictive meaning must be given" to those statutes, whether read singly or together. Accordingly I hold that, when interpreted in the light of history and viewed within the framework of the Constitution, 28 U.S.C. § 1345 does not confer upon a Federal district court jurisdiction over a State in a civil action brought by the United States to recover from the State damages resulting from negligence of State agents, absent a waiver of the State's sovereign immunity.

It follows that this cause must be dismissed for lack of jurisdiction over both the person of the defendant and the subject matter of the action. [See Fed.R. Civ.P. 12(b) (1) and (2) and 12(h), 28 U.S.C.A.]